(No. 6197. February 21, 1935.)

ERNEST LEACH, Respondent, v. GRANGEVILLE HIGH-WAY DISTRICT and STATE INSURANCE FUND, Appellants.

[41 Pac. (2d) 618.]

Harry J. Hanley and P. C. O'Malley, for Appellants.

John W. Cramer, for Respondent.

MORGAN, J.—November 15, 1933, respondent was employed by Grangeville Highway District as a laborer in the construction and repair of its highways, and had been so employed for about three years prior thereto. That day, as a part of his duty to his employer, he was handling gravel on a road with a caterpillar tractor and grader. The track of the tractor threw up dust and gravel and the wind blew some of it into his left eye, which immediately became inflamed and painful. Prior to this occurrence, and on October 23, or 24, 1933, respondent, while unloading a truck load of gravel on the road, got gravel and dust in his left eye which caused it to become irritated and painful, but it subsided without causing loss of employment, and he did not consult a physician with respect to it.

In February, 1929, while respondent was employed by a man named Green, he suffered an accident which arose out of and in the course of his employment and which caused the loss of about 90 per cent of the vision of his left eye. Green carried workmen's compensation insurance and, because of that injury, respondent was paid for permanent partial disability, consisting of nine-tenths loss of vision of his eye, the sum of $1,167.21.

The injury caused by the accident which occurred in 1929 was healed so that it caused respondent no inconvenience, other than from partial loss of vision, but left his eye in

condition to be more susceptible to injury by the dust and gravel which got into it in October and November, 1933, than a normal eye would have been.

November 16, 1933, respondent was still suffering from the effects of having dust and gravel blown in his eye the day before and consulted a physician who prescribed medicine for it, which he procured and used as directed. The condition continued to grow worse and, November 23d, he consulted an eye specialist who found it necessary to, and did, November 25th, enucleate the eye.

The hearing before the industrial accident board resulted in an award of compensation to respondent based on the loss of his eye by enucleation and without deduction because he had received compensation for the previous injury. Appeal to the district court resulted in the affirmance of the award, and the case is here on appeal from the judgment affirming it.

Appellants contend: 1. The evidence is insufficient to establish that the loss of respondent's eye was caused by dust and gravel being blown into it; 2. The evidence is insufficient to establish that the dust and gravel got into respondent's eye by accident; 3. If respondent is entitled to compensation for the loss of his eye there should be deducted from the award the amount paid to him because of his partial loss of vision due to his accident in 1929.

The condition of respondent's eye which made necessary its removal is known as iridocyclitis. Expert medical testimony was offered to the effect that while there might have been a recurrence of that condition after the former injury, without the presence of the dust and gravel in the eye, such recurrence was not to be expected after so long a period of time as had elapsed since the accident of 1929. Dr. Gist, the specialist who removed the eye, testified, on cross-examination:

"Q. Well, now, Doctor, in connection with this case wouldn't it be perfectly possible that the eye just in the course of time would gradually weaken and degenerate and

this would have happened to Mr. Leach regardless of what he was doing or what occupation he had?

"A. It is possible that he could get a secondary iridocyclitis, sure, following his old injury, but it would not deteriorate so rapidly. When those things happen it is usually like he did, from any irritation it flares up and it don't take them very long one way or the other. It usually takes the same course that his did."

██ It is established, by preponderance of evidence, that the removal of respondent's eye was made necessary by a condition which resulted from dust and gravel coming in contact with it while he was in the discharge of duties developing on him in the course of his employment. It is not necessary that the facts on which an award is based be established beyond reasonable doubt. In a case of this kind the decision is to be made according to preponderance of evidence, and it is not incumbent on a claimant to establish the cause of his injury by proof of a higher degree than that, or to the exclusion of other possible causes. (*Roe v. Boise Grocery Co.*, 53 Ida. 82, 21 Pac. (2d) 910; *Riley v. City of Boise*, 54 Ida. 335, 31 Pac. (2d) 968.)

██ Appellants contend the getting of dust and gravel in respondent's eye was not an accident, and argue that he cannot successfully rely on the occasion in October, 1933, when he got dust and gravel in his eye, because he recovered therefrom without injury. With respect to the occurrence on November 15, 1933, they urge that one who goes on a highway on a windy day and moves and stirs up gravel and dust thereon must expect to get some of it in his eyes, and that, therefore, the injury which respondent complained of was not an accident as defined in a number of Idaho cases. They cite *Riley v. City of Boise*, 54 Ida. 335, 31 Pac. (2d) 968; *McNeil v. Panhandle Lbr. Co.*, 34 Ida. 773, 203 Pac. 1068; *Reinoehl v. Hamacher Pole etc. Co.*, 51 Ida. 359, 6 Pac. (2d) 860.

In the Reinoehl case the word accident as used in the workmen's compensation law is discussed at considerable length, and it is therein said that:

"The expression 'accident' is used in the popular and ordinary sense of the word as denoting an unlooked-for mishap or an untoward event which is not expected or designed."

One of the difficulties encountered in defining the word accident is to find terms which correctly indicate its meaning and which are not as greatly in need of definition as is the word itself.

There is no doubt that one who goes on a highway when the wind is blowing, and who stirs up dust and gravel is apt to get some of it in his eyes, but it does not follow he should expect to have the dust and gravel blown in his eyes in such quantities and with such force as to make the removal of one of them necessary. The evidence in this case leaves no room for argument that respondent's injury was not the result of accident as that term is popularly understood.

As heretofore stated, respondent's eye, due to his former accident, was more susceptible to injury by dust and gravel than it would have been had it been normal, but since the necessity for its removal was caused by the accident which arose out of and in the course of his employment by the highway district, and would probably not have been necessary except for that, the weakened condition of the eye, due to the former accident, has no bearing on the right to recover. (*Strouse v. Hercules Min. Co.*, 51 Ida. 7, 1 Pac. (2d) 203.)

Appellants' contention that there should be deducted from the award the amount paid respondent because of his partial loss of vision due to a former accident is based on the theory that he did not suffer total loss of his eye in the accident which befell him while employed by the highway district; that prior to his last accident he had lost, and had received compensation for, 90 per cent of the vision

of his left eye and had but 10 per cent to lose. This contention cannot be sustained. Respondent is entitled to compensation, not because of loss of vision or of loss of earning power in consequence thereof. He is entitled to specific indemnity for the loss of his eye by enucleation, as provided for in I. C. A., sec. 43–1113.

In *Kelley v. Prouty*, 54 Ida. 225, 30 Pac. (2d) 769, this court pointed out that the compensation provided by our statute for certain classes of injuries by accident arising out of and in the course of employment is based on disability for work, and that there is another class of injuries, to which the one here under consideration belongs, for which specific indemnities have been provided, without regard to depreciated earning power, saying:

"The compensation law also provides for specific indemnities for certain injuries, as set forth in section 43–1113, when disability for work by reason of the loss of the various members of the body enumerated is not to be taken into consideration. (*Panico v. Sperry Engineering Co.*, 113 Conn. 707, 156 Atl. 802.) But the general theory and spirit of the act, except for the specific indemnities set forth in section 43–1113, is to the effect that compensation is provided to make good the loss of the earning power or capacity to work on account of the injury." (See, also, *Haugse v. Sommers Bros. Mfg. Co.*, 43 Ida. 450, 254 Pac. 212, 51 A. L. R. 1438.)

The judgment appealed from is affirmed. Costs are awarded to respondent.

Givens, C. J., and Budge, Holden and Ailshie, JJ., concur.