**AMERICAN GENERAL INSURANCE COMPANY, Appellant,**

v.

**Suwillow BARRETT et al., Appellees.**

No. 6920.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 7, 1957.

Rehearing Denied March 7, 1957.

Second Motion for Rehearing Denied April 4, 1957.

Vinson, Elkins, Weems & Searls, Thomas B. Weatherly, Sam W. Davis, Jr., Gaius G. Gannon, Jr., Houston, for appellant.

Henry E. Doyle, Houston, for appellees.

CHADICK, Chief Justice.

This is a compensation case appealed from Harris County and transferred from the First Supreme Judicial District to the Sixth by an equalization of dockets order of the Supreme Court. The case is affirmed for the reasons hereinafter stated.

Eddie Barrett, Sr., a Negro man *60* years of age, had been employed by Brown

& Root, Inc., regularly for several years and was seldom absent from his employment. Barrett, in apparent good health, was leaving that firm's job on the premises of Humble Oil & Refining Company at Baytown on the afternoon of July 14, 1954, immediately after the four o'clock quitting whistle sounded. Along with other workmen, he was walking down a road composed of gravel and shell, and described by witnesses as hard-surfaced, from the vicinity of his immediate duties to the clock-house for the purpose of checking out. During the day, the group Barrett worked with had been engaged in checking leaks around pipes, back-filled some pipe ditches, and washed down some drums with a water hose. It was a normal summer day, the maximum temperature 92° (F.).

As Barrett approached the clock-house he suddenly stopped and said he was going to "black out." As he fell back, he made no attempt to break the fall with his hands, and one witness said he appeared to be unconscious and was red in the face. He fell backwards, completely limp, his head striking the hard street. He was unconscious when his fellow-workmen reached him.

In a matter of a very few minutes, he was carried to the Humble First-Aid Station and there examined by a nurse. No lacerations, abrasions or bruises were then or later visible on his head. Shortly after reaching the First-Aid Station he regained consciousness, refused aid or medication and left for his home by his usual conveyance. On the way home, he was met by his wife who had been informed of the occurrence, and without aid changed to her car and continued home.

On reaching home he indicated that he did not want to talk about his injuries and wanted to get out and do his evening chores. He sat in a chair for a time while his wife bathed his face. He then went to take a bath and get ready for supper, and while bathing complained that his head had started hurting and did not

finish his bath. Putting his clothes on, he lay down and did not attempt to eat supper. At this show of debility, a doctor was called and administered a hypodermic. The next morning, July 15th, the doctor ordered him to a hospital. This doctor did not testify.

At the hospital Barrett was first treated for heat exhaustion. On the 17th an X-ray of Barrett's head was made and a fracture of the skull discovered. Other doctors were called in. A lumbar puncture at the third interspace was made and fluid in two specimens was grossly bloody. Barrett died about 11 o'clock on the morning of July 18, 1954.

Medical testimony of three doctors is in the record. One, the appellees' medical expert witness, was a general practitioner; and the appellant's two medical witnesses were specialists, that is, neuro-surgeons.

The medical testimony may be fairly summarized by stating that each of the three doctors testifying at the trial gave it as his opinion that Barrett died as a result of a subarachnoid hemorrhage and that death was from a natural cause as distinguished from one of traumatic origin. However, in their examination and cross-examination, other opinions were given which were at variance with these final conclusions.

Illustrative are these questions and answers:

"Q. Let me ask you, if he had fallen with force sufficient to cause a fracture of the skull, could that have been a producing cause of the subarachnoid hemorrhage you are talking about? A. Yes, he could have fallen from any other cause and fractured it, yes, it could cause it.

"Q. So, then, it is your testimony, while you are not saying what caused him to fall, that if he did fall, and in the course of falling it fractured his skull it is possible that could have

produced the subarachnoid hemorrhage? A. That is right.

\* \* \* \* \* \*

"Q. You are naturally puzzled as to what might have caused him to be in the condition he was in? A. Yes, sir.

"Q. And one of the conclusions you had was that a fracture of the skull caused it? A. Yes sir.

\* \* \* \* \* \*

"Q. The history did not tell you what caused him to fall and pass out? A. No, it does not tell me that. It just says he had the headache.

"Q. Will you testify that the hemorrhage could have been caused by a fall which was of sufficient force to fracture his skull? A. A man who has a weakened blood vessel, an aneurism can rupture spontaneously without injury, and it can rupture from a minor injury and it can rupture from a serious injury.

"Q. It is your testimony it could have ruptured as a result of this fall? A. If there was nothing wrong with the patient before the fall, if he had no symptoms before the fall, then I would say yes.

"Q. Is a fall sufficient in force to cause a fracture sufficient to cause an aneurism, whether he had anything wrong with him or not? A. I would say yes.

\* \* \* \* \* \*

"Q. What is your opinion as to the fracture? A. From the history I would say the man had the initial hemorrhage which caused him to lose consciousness, then he fell, he apparently fell backward and struck the occipital portion of the skull against the pavement he was walking on and that caused the fracture.

"Q. This history that was given about how he fell, suddenly falling and fainting, is that compatible with the diagnosis you gave? A. Yes. That would be the first thing you would think of in a case like that. I think probably the most common thing is that a spontaneous hemorrhage causes a loss of consciousness.

"Q. What happens to a person when they have these blood vessels burst in the brain, do they become unconscious immediately? A. Yes, maybe and maybe not. It depends on the severity of the hemorrhage and how long it lasts. I would rather suspect from the history that was an initially small hemorrhage. It was enough of a shock to produce pressure to the brain and cause a loss of consciousness, then apparently he came out and was able to be taken to the dispensary, and they took him home; then he became drowsy and his speech became thickened. I believe his wife and one member of the family stated he went in and laid down on the bed and they tried to arouse him but couldn't. That indicates to me that the man had some more hemorrhages. A spinal puncture was performed and that showed blood, which appeared as a consequence.

"Q. That day he died what was the condition? A. He was deeply comatose, had a lot of edema in the lungs due to the fact that the pressure or swelling in the brain affected the respiratory center, and they do not breathe and cough and the secretions are not coughed out or swallowed as in a normal person, and they fill up with mucous, and he probably died with pneumonia and a lack of oxygen to the brain.

"Q. In your opinion was the cause of death in this case due to natural causes as distinguished from a traumatic origin? A. I have no way of knowing this man was not hit in the head, but I assume that this was the

consequence of it, and that would be a very natural consequence.

\* \* \* \* \* \*

"Q. Assuming that Doctor—let's say for the sake of the hypothetical question, just say he was seized with an aneurism to cause him to slump, if he had not fallen with such force that he fractured his skull, is it possible that he still might be alive today? A. Yes, I think it is possible. I don't think there is any way you can answer that question.

"Q. What I am trying to get at is this: Isn't it a fact that the seizure of this aneurism, whatever it is in itself might not have been fatal but for his striking his head against a paved or hard surfaced road and developing a skull fracture? A. Well, I think that could have contributed—could have been a contributing factor, but I think what you are trying to ask me is if he had not fallen he might not have died. There is no way of knowing. An aneurism does not ordinarily produce a lot of hemorrhage, because when you cut open the skull there is very little bleeding. I think this bleeding was from a hemorrhage of the blood vessel. He could have had a small fracture and then later a larger one. There is no way of knowing those things.

"Q. Isn't it true that a blow sufficiently hard to cause a fracture could have been a contributing cause to the hemorrhage? A. Yes, I think it could."

Appellees' doctor filed a death certificate on the standard form provided by the Texas Department of Health, Bureau of Vital Statistics. This certificate under a heading "Cause of Death" has a subdivision 1(a) with a heading "Disease or condition directly leading to death" and an instruction in connection with it that "This does not mean the mode of dying, such as heart failure, asthenia, etc. It means the disease, injury or complication which caused death."

In answering this subdivision 1(a), the doctor inserted "Fracture of skull." Subdivision 1(b) deals with antecedent causes and defines them as "morbid conditions, if any, giving rise to the above cause (a) stating the underlying cause last." In subdivision 1(b) the doctor inserted, "Subarachnoid hemorrhage." This certificate was admitted in evidence as original evidence without objection.

The family not being agreeable, no post mortem examination was made.

The parties and the court laudably kept the issues and the testimony simple, clear and direct. By stipulation counsel agreed to limit trial to these issues: "(a) Did Eddie Barrett, Sr., die as alleged by his widow and children in their pleadings by falling on the back of his head and fracturing his skull dying from such injuries four days later; or, (b) Did Eddie Barrett die of natural causes and not from an accidental compensable injury?"

The court in a non-jury trial rendered judgment in favor of appellees for maximum benefits payable at death under the terms of the Workmen's Compensation Act.

Appellant complains that such judgment was erroneous because there was (Point 1) no evidence that a fracture of Eddie Barrett's skull caused or contributed to cause his death; and (Point 2) a finding that a fracture of Eddie Barrett's skull caused or contributed to cause his death is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

The first of these contentions is based upon the exceptional doctrine expressed in Travelers Ins. Co. v. Blazier, Tex.Civ.App. 1950, 228 S.W.2d 217 (wr. dism.), that where the subject is one peculiarly within the realm of scientific knowledge the trial court being a layman can not properly form correct opinions either from his own experience or from facts or opinions testified to by lay witnesses. The Blazier case is concerned with a diagnosis of poliomyelitis by the doc-

tor and the compensation claimant's self-diagnosis of heat stroke.

A fair summary as heretofore stated, of the testimony by the three medical expert witnesses would be that their final opinion is that Eddie Barrett died of natural causes as distinguished from those of traumatic origin. But as set out above, by their testimony in detail, they expressed opinions and conclusions at variance with their final opinion. The death certificate unconditionally attributes death to a skull fracture.

We have here only another instance of witnesses testifying to a fact or opinion at one time and at another time to a different fact or opinion, all apparently in the best of good faith. It is the prerogative and duty of the fact finder, in this instance the trial judge, to resolve the contradictions. That the opinion of experts may be accepted or rejected and is not conclusive on the fact finder is so fundamental to our system of jurisprudence and so well established that it is hardly necessary to cite authority. Edwards v. West Texas Hospital, Tex.Civ.App.1935, 89 S.W.2d 801, (error dism.); Texas Employers Ins. Ass'n v. Griffis, Tex.Civ.App.1940, 141 S.W.2d 687; Coxson v. Atlanta Life Ins. Co., 1944, 142 Tex. 544, 179 S.W.2d 943; State v. Dickey, Tex.Civ.App.1942, 158 S.W.2d 844.

No objection was voiced when appellees elicited from each of the doctors the statement that may fairly be summarized as this: "A fall, such as Eddie Barrett had, of sufficient force to fracture his skull *could* cause the subarachnoid hemorrhage and thereby cause or contribute to cause his death." In this appeal appellant argues that such evidence is speculative and has no evidentiary force and of course should be discarded. And if discarded, there is no evidence that the skull fracture caused or contributed to cause death. In support of this contention, Galveston, H. & S. A. Ry. Co. v. Powers, 1907, 101 Tex. 161, 105 S.W. 491, and Galveston, H. & S. A. Ry. Co. v. Henefy, Tex.Civ.App.1909, 115 S.W. 57 (er. ref.) are cited as authority.

Each of these cases deal with the admissibility of expert testimony to prove future effects of injuries and limits such testimony to the reasonable, probable effects of present injuries in the future.

The evidence here renders this case distinguishable because the fact under investigation is not remote future effects of injury but is confined to tracing of the cause of death under the established facts of this case. This is a diagnosis rather than a prognosis.

Here it is shown that the deceased "blacked out" and fell with such force that his skull fractured and after a few hours of returned consciousness became comatose and died the fourth day thereafter. The question put to the doctors inquired if the fracture could have caused or contributed to cause death. They answered that it could have, which is to say that the fracture was one of perhaps several possible causes of death.

An answer to a question so framed has probative force under the holdings in Republic Underwriters v. Howard, Tex.Civ. App., 69 S.W.2d 584 (wr. dism.); and El Paso Electric Co. v. Beckman, Tex.Civ.App. 1935, 89 S.W.2d 470 (err. dism.). Since the trial court had before it competent evidence that the skull fracture caused or contributed to cause the death of Eddie Barrett, its findings must be sustained.

Appellant asserts as additional grounds of reversal (Point 3) that the trial court erred in its judgment that the injury sustained by Eddie Barrett is compensable within the meaning of Article 8309, Sec. 1, R.C.S., Vernon's Ann.Civ.St. art. 8309, § 1, because it was not an injury having to do with and originating in the work of his employer, Brown & Root, Inc.

A great body of case law has grown out of the many cases which had dealt with this difficult question of determining whether an injury has to do with and originates out of the work of an employer. The divergent theories of the many cases have been recon-

ciled by able textbook writers. For some of these cases and comment thereon, see Lawler's Texas Compensation Law, Chap. 6, pars. 90–96. To repeat seems unnecessary.

Affirmance of this case must rest primarily upon General Ins. Corp. v. Wickersham, Tex.Civ.App.1950, 235 S.W.2d 215 (err. ref., NRE), and to a lesser extent on Garcia v. Texas Indemnity Ins. Co., 1948, 146 Tex. 413, 209 S.W.2d 333, 337.

In the Wickersham case compensation for death was awarded on facts that assumed a janitor suffered a dizzy spell and fell to the tile floor of a restaurant, fracturing his skull, the fracture causing death. There is no distinction from the Wickersham fact and the facts of this case under the trial court's presumed findings.

The Garcia case is not in point in the facts but seems to give support. In it is this language:

"The post with the sharp corners, which resulted from measures taken to protect the post, was a condition attached to the place of Garcia's employment; more than that, it was an instrumentality essential to the work he was waiting to do. Since his duties required him to be near the post at that time, the danger of falling against it was a hazard to which he was exposed because of his employment; and injury and death from a crushed temple suffered when he did fall against it came to him because he was then acting in the course of his employment and under the conditions of his employment. If he had not been working he might have suffered the epileptic stroke anyhow and he might have fallen just as he did fall, but he certainly would not have fallen against this post with its sharp edges to fracture his temple and die."

█ In the instant case it can be said the hard-surfaced road was an instrumentality essential to the work of the employer and falling against it was a hazard to which Barrett was exposed because of his employment and injury and death came to him because he was then working in the course of his employment.

Appellant's counsel has presented a masterful brief in which cases from all jurisdictions dealing with this question are listed.[1] On the basis of a physical count of

1. The cases holding such injuries not compensable are: Bagwell v. Ernest Burwell, Inc., 1955, 227 S.C. 444, 88 S.W.2d 611, Sup.Ct. of South Carolina; Henderson v. Celanese Corp., 1954, 16 N.J. 208, 108 A.2d 267, Sup.Ct. of N.J.; Andrews v. L. & S. Amusement Corp., 1930, 253 N.Y. 97, 170 N.E. 506, Ct.App. of N.Y.; Bibb Mfg. Co. v. Alford, 1935, 51 Ga.App. 237, 179 S.E. 912, Ct.App. of Ga.; Postel v. Industrial Commission, 1955, 163 Ohio St. 617, 128 N.E.2d 29, Sup.Ct.Ohio; Remington v. Louttit Laundry Co., 1950, 77 R.I. 185, 74 A.2d 442, Sup.Ct.R.I.; Vause v. Vause Farm Equipment Co., 1952, 233 N.C. 88, 63 S.E.2d 173, Sup.Ct.N.C.; Pollock v. Studebaker Corp., 1952, 230 Ind. 622, 105 N.E.2d 513, Sup.Ct.Ind.; Riley v. Oxford Paper Co., 1954, 149 Me. 418, 103 A.2d 111, Sup.Judicial Ct. of Maine; Sears, Roebuck & Co. v. Industrial Commission, 1950, 69 Ariz. 320, 213 P.2d 672, Sup.Ct.Ariz.; Dustin v. Lewis, 1955, 99 N.H. 404, 112 A.2d 54, Sup.Ct.N.H.; Pucilowski v. Packard Motor Car Co., 1936, 278 Mich. 240, 270 N.W. 282, Sup.Ct. Mich.; Cinmino's Case, 1925, 251 Mass. 158, 146 N.E. 245, 37 A.L.R. 769, Sup.Judicial Ct. of Mass.; Marion Machine Foundry & Supply Co. v. Redd, 1925, 115 Okl. 30, 241 P. 175, Sup.Ct.Okl.; Cox v. Kansas City Refining Co., 1921, 108 Kan. 320, 195 P. 863, 19 A.L.R. 90, Sup.Ct. Kansas.

The cases holding such injuries compensable are: Employers Mutual Liability Ins. Co. of Wisconsin v. Industrial Accident Commission, 1953, 41 Cal.2d 676, 263 P.2d 4, Sup.Ct.Cal.; General Ins. Corp. v. Wickersham, Tex.Civ.App.1950, 235 S.W.2d 215 (error ref. N.R.E.); Savage v. St. Aeden's Church, 1937, 122 Conn. 343, 189 A. 599, Sup.Ct.Conn.; Barlau v. Minneapolis-Moline Power Implement Co., 1943, 214 Minn. 564, 9 N.W. 2d 6, Sup.Ct.Minn.; New Amsterdam Casualty Co. v. Hoage, 1932, 6 App.D.C. 306, 62 F.2d 468, Ct. of Appeals for the Dist. of Columbia.

the cases, it appears that the Wickersham holding is with the minority view.

The Wickersham reasoning and decision and the support that the Garcia case indicates is persuasive and this Court is not free to depart from it.

The judgment of the trial court is affirmed.

## On Motion for Rehearing.

In deference to the lucid argument made by appellant in its motion for rehearing, some brief comment seems to be in order respecting this Court's refusal to recede from the original opinion.

In the motion for rehearing it is contended that the death certificate mentioned in the original opinion is hearsay and constituted no evidence. Art. 4477, Rule 54a, Vernon's Ann.R.C.S., Acts 52d Leg. p. 145, ch. 87, sec. 4, provides that such record when certified by the State Registrar shall be prima facie evidence in all courts and places of the facts therein stated. By force of the statute the death certificate is evidence and has probative force. The contention that the doctor explained or repudiated this certificate is not satisfactory because his testimony shows that his explanation or repudiation was not based on any fact not known to him at the time the certificate was made.

This evidence in addition to other evidence which has been mentioned is sufficient to sustain the judgment of the trial court. In addition to the Beckman and Howard cases cited in the original opinion, Texas Employers Ins. Ass'n v. Fletcher, Tex.Civ. App.1948, 214 S.W.2d 873, er. ref., may be added as further authority for this view. From the evidence before the trial judge he was authorized to conclude that the fracture to the skull of Eddie Barrett caused or contributed to cause his death.

With respect to the criticism leveled at the Wickersham and Garcia cases, there is nothing to be gained by arguing their va-

lidity until the Supreme Court passes upon the question presented by this case. They are deemed to be controlling and require a disposition such as has been made.

So that no misunderstanding of this Court's action may arise, in keeping with the directions announced in King v. King, 150 Tex. 662, 244 S.W.2d 660, this Court finds that the evidence is sufficient to support the judgment and that the judgment is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

The motion for rehearing is overruled.