GEORGE BREWER, APPELLEE AND CROSS-APPELLANT, V.
ARTHUR L. HILBERG, APPELLANT AND CROSS-APPELLEE.
115 N. W. 2d 437

Filed June 1, 1962. No. 35187.

*Tye, Worlock & Knapp,* for appellant.

*Andrew J. McMullen,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ., and CHADDERDON, District Judge.

BOSLAUGH, J.

This is an appeal in a proceeding under the Workmen's Compensation Act. George Brewer, the plaintiff, was employed as a plumber's helper by Arthur L. Hilberg, the defendant, at the time the plaintiff was injured.

The plaintiff recovered an award in the compensation court. The defendant waived rehearing before the full compensation court and appealed directly to the district court. After trial de novo in the district court the plaintiff again recovered an award. Both parties filed motions for new trial which were overruled. The defendant then appealed to this court and the plaintiff has cross-appealed.

A proceeding under the Workmen's Compensation

Act is considered and determined de novo upon the record by this court. Graber v. Scheer, *ante* p. 552, 114 N. W. 2d 13.

On Friday, October 14, 1960, the plaintiff was helping Darel Heppner install steam pipes at the gymnasium then under construction at the State Teacher's College in Kearney, Nebraska. The work consisted of welding 9-foot sections of pipe to pipes that had been previously installed and which extended vertically through the floor of the building. The plaintiff's job was to hold the pipe in a vertical position until it was properly lined up and in position to be welded.

The plaintiff testified that while he was holding a section of pipe and turning it so as to bring it into position to be welded, it slipped off the pipe extending through the floor and pulled him over. As the pipe fell to the floor it made a connection with a cable, or a welding rod attached to the cable, from an electric arc welding machine and there was a flash or an arc 3 or 4 inches in front of his face. After the flash the plaintiff fell backwards. The plaintiff told Heppner about his eyes hurting but continued to work.

When Heppner began to weld the pipe which had fallen, the cable burned through just behind the holder. While Heppner repaired the cable, the plaintiff washed his eyes and face with cold water and wet his handkerchief and held it to his eyes. At that time the plaintiff told Heppner that his eyes were burning. Late that afternoon the defendant came to the job and the plaintiff told him that his eyes were burning.

When the plaintiff went home he put Murine in his eyes and applied a cold towel. Later his wife put grated potato on his eyes. The next morning the plaintiff reported his condition to the defendant and the defendant suggested that he consult Dr. Jester. Dr. Jester was not available so the plaintiff consulted Dr. Johnson. Dr. Johnson did not testify but the plaintiff testified that

Dr. Johnson gave him a prescription which relieved the pain.

The plaintiff saw Dr. Jester that evening. Dr. Jester testified that he examined the eyes of the plaintiff on the evening of October 15, 1960, and found that the epithelium or top layer of tissue of the cornea of both eyes had been disrupted; that the injury to the left eye was considerably more serious than the injury to the right eye; that the left eye appeared to be secondarily infected; and that this type of injury is produced by an arc flash.

Darel Heppner testified by deposition that on the afternoon of October 14, 1960, one of the steam pipes slipped off the stationary pipe while the plaintiff was holding it and turning it; that Heppner was about 30 or 40 feet away from the pipe when it fell and he did not see a flash; that later when he started to weld the pipe the cable burned in two; that while he was repairing the cable the plaintiff said that his eyes hurt, that they burned, and that he had "got a flash"; and that the defendant came to the job later and the plaintiff told him that he had "got a flash."

The defendant testified by deposition that the first he knew of the plaintiff's injury was on the morning of October 15, 1960, when the plaintiff came to the defendant's house and said that his eyes had been burned by a welding flash.

The defendant contends that the evidence is not sufficient to prove that the plaintiff was injured as the result of an accident arising out of and in the course of his employment. The defendant argues that the plaintiff was impeached to such an extent that his credibility was completely destroyed and that the other evidence standing alone is insufficient to meet the burden of proof. The record indicates that the plaintiff has a record of psychoneurotic behavior and is not worthy of belief. However, when the plaintiff's testimony is considered together with the testimony of Darel Hepp-

ner and Dr. Jester, the evidence is sufficient to establish that the plaintiff was injured as the result of an accident arising out of and in the course of his employment.

The district court found that the plaintiff was entitled to compensation at the rate of $37 per week from October 15, 1960, to October 1, 1962, for temporary total disability; and from October 1, 1962, for 125 weeks for the loss of his left eye. The district court also allowed the plaintiff $1,893.40 for medical and hospital services less a credit of $38.07 for amounts obtained from the defendant by fraud. The district court further provided that the defendant should continue to pay for medical services as authorized by the plaintiff's treating doctor, and that the plaintiff should have the right to reopen the case at a later date on the basis of a change in condition if he can establish permanent disability to his right eye by objective evidence.

The plaintiff by cross-appeal contends that he is entitled to an award of permanent total disability because he has lost the use of both eyes as a result of the accident. The contention is based upon the testimony of Dr. Jester that the plaintiff has no light perception in his left eye and a visual efficiency of only 10.9 percent in his right eye.

The evidence establishes that the plaintiff has lost the use of his left eye as a result of the accident on October 14, 1960. The surface tissue of the cornea of the left eye has never healed satisfactorily. At this time the eyelids of the left eye are sewn together. At some time in the future it will be necessary to remove the sutures. If the cornea does not heal, the left eye will require continued treatment. There is also a possibility that at some time it may be necessary to remove the left eye.

The evidence does not establish that the plaintiff has lost any part of the use of his right eye as a result of the accident. Dr. Jester did testify that in calculating

visual efficiency it is necessary to consider central visual acuity, visual field, and binocular vision; that the plaintiff has approximately 87½ percent central visual acuity in his right eye, a loss of approximately 71.8 percent in visual field, and 50 percent binocular vision; that when these factors are considered together the visual efficiency of the right eye is 10.9 percent; and that visual efficiency of less than 10 percent is considered to be total disability. But all of the visual acuity tests and visual field tests which were used to measure the visual efficiency of the plaintiff's right eye are subjective tests and depend upon the patient's responses. For that reason there is serious question as to accuracy of the data upon which Dr. Jester's calculations were based. Furthermore, under our statute a workman is not entitled to recover compensation for the loss of binocular or stereoscopic vision resulting from the loss of one eye. The compensation set forth in subdivision (3) of section 48-121, R. R. S. 1943, is exclusive and includes all impairments that naturally follow the loss of one eye. The compensation provided for the loss of an eye includes the loss of stereoscopic vision. Carlson v. Condon-Kiewit Co., 135 Neb. 587, 283 N. W. 220.

On cross-examination Dr. Jester admitted that there is no objective symptom of pathology in the right eye; that, ordinarily, if the plaintiff's vision were restricted to the extent the tests indicate, there would be some objective symptom of pathology; that such symptoms sometimes show up in 2 to 3 months, but that there are reports in the literature in which the symptoms have not shown up for as long as maybe 2 years; that "when I look inside, the retina looks perfectly normal. I can't see anything wrong with the eye at all"; and that he does not know what is wrong with the right eye or why there is a loss of vision. Upon the record in this case there is no basis at this time upon which to award the plaintiff compensation for loss of any use of his right eye. If at some future date the plaintiff has additional

evidence which he wishes to submit to the compensation court, the remedies that are available to him are those that are provided by the statute. The judgment of the district court should be modified by striking any reference to reopening the case upon the basis of a change in condition.

The trial in the district court took place on August 24 and 25, 1961. The district court rendered its decision on September 5, 1961. The district court found that the plaintiff was temporarily totally disabled from October 15, 1960, to the present time and "will remain temporarily totally disabled until October 1, 1962." The statute contemplates that an employee shall receive compensation for temporary disability during the time in which he is convalescing. Temporary disability ends when the condition becomes fixed and the employee is restored so far as the permanent character of his injuries will permit. Allen v. Department of Roads & Irrigation, 149 Neb. 837, 32 N. W. 2d 740. The evidence in this case does not show any hospitalization after April 5, 1961, or treatment after August 22, 1961. There is no evidence to support a finding that temporary total disability continued past August 25, 1961. Accordingly, the judgment of the district court should be modified to provide that the right to compensation for temporary total disability ended August 25, 1961, and that the plaintiff is entitled to compensation at the rate of $37 per week for 125 weeks from August 26, 1961, for the loss of his left eye.

The judgment of the district court included an allowance to the plaintiff of $125 for medical services furnished by Dr. Potter and $20 for medical services furnished by Dr. Watland. The evidence does not show that this expense was reasonably necessary for the treatment of the injury to the plaintiff's eyes. The judgment of the district court should be modified by deleting these two items from the list of medical expenses allowed the plaintiff.

The district court also found that the defendant was liable "for such further medical services as the plaintiff's treating doctor shall authorize." Although the evidence indicates that the plaintiff will have future medical expense as a result of the injury sustained in the accident on October 14, 1960, the defendant is liable only for reasonable medical and hospital services and medicines as and when needed. § 48-120, R. R. S. 1943. In the event the parties are unable to agree as to such expense, then the matter may again be submitted to the compensation court. The judgment of the district court should be modified by striking the reference to the liability of the defendant for future medical expenses.

As modified, the judgment of the district court is affirmed.

AFFIRMED AS MODIFIED.