430 P.2d 681

Raymond T. GENTRY, Claimant-Respondent,

v.

BANO, INC., and Employers Mutual Liability Insurance Company of Wisconsin, Defendants-Appellants.

No. 9950.

Supreme Court of Idaho.

July 19, 1967.

Gigray, Boyd & Downen, Caldwell, for appellants.

Swayne & McNichols, Orofino, for appellee.

McQUADE, Justice.

The specific indemnity provisions within the Workmen's Compensation Law of Idaho direct that partial permanent disability compensation be awarded as follows:

> "For loss of one:
> \* \* \* \* \* \* \* \*
> "Eye by enucleation ...............140 [weeks]
>    Total blindness of one eye ........120 [weeks]
> \* \* \*." I.C. § 72–313.

The only question presented by this appeal is whether the Industrial Accident Board may award one hundred and forty weeks specific indemnity for the enucleation or surgical removal of the bulb or ball of an eye (bulbus oculi) which was permanently sightless at the time of the industrial accident which made necessary the enucleation.

The pertinent facts may be stated briefly as follows. Raymond Gentry, respondent, had lost the sight in his right eye as the result of a non-industrial accident in 1959. How soon afterwards his eye became blind does not appear from the record, but there was "absolutely [no] remote possibility that [respondent's right eye's] vision would have ever returned" after the 1959 injury, according to D. W. Henry, M.D., who treated it at that time.

Sometime after the 1959 injury, respondent entered the employ of appellant Bano, Inc., as a sawyer, and on January 10, 1964, was working in the woods near Orofino, Idaho, when, in his words, "a little tree threw back a limb [which] struck me on my nose and [right] eye." Immediately after the accident, J. K. Worden, M.D., a Lewiston, Idaho, ophthalmologist, diagnosed the eye injury as a "laceration of right outer canthus," and sutured the laceration. Dr. D. W. Henry, who had treated the 1959 injury, examined the eye on February 15, 1964, and stated that the January 10, 1964 accident had done "direct injury or damage to the eye itself \* \* \* [namely] contusion injury with internal bleeding and pressure [glaucoma]" which caused irritation. It was Dr. Henry's opinion that

enucleation was made necessary by the injury on January 10, 1964; he said: "it [the enucleation] was necessary [solely] because of the 1964 accident. Patient had slight difficulty with the eye prior to 1964."

The Board found that the injury to respondent's right eye on January 10, 1964, was sustained in a compensable industrial accident and that the necessity for enucleation "was occasioned by" that accident. Neither finding is challenged on this appeal.

■ Appellants' only assignment of error concerns the Board's further finding that enucleation of respondent's eye, although permanently sightless at the time of enucleation, entitled him to a full one hundred forty weeks specific indemnity for "loss of one * * * Eye by enucleation." I.C. § 72–313. Appellants contend that the provision refers only to an eye with vision and that a sightless eye is no eye at all within the statute. Thus, they argue, I.C. § 72–313 compensates loss of sight with one hundred and twenty weeks specific indemnity, and awards another twenty weeks for the sightless eyeball's removal; so that although loss by enucleation of a healthy eye would entitle a claimant to one hundred and forty weeks indemnity, respondent's loss entitles him to indemnity for only twenty weeks.

The present specific indemnity statute, I.C. § 72–313, has been amended and reenacted several times since its original enactment in 1917, Idaho Sess.Laws 1917, ch. 81, § 21, at 264, most recently in 1959, Idaho Sess.Laws 1959, ch. 212, § 1, at 467–468, but the provisions for loss of eye by enucleation and for total blindness have remained as quoted in the first paragraph of this opinion. Nevertheless, neither "eye" nor "enucleation" has been defined by title 72 of the Idaho Code, the title which contains workmen's compensation and related acts.

■ In common usage, and there is no suggestion that the legislature intended any other, "eye," in its medical sense, means "organ of sight," Webster, Third New International Dictionary 809 (1967), or "organ of vision," Dorland, Medical Dictionary 529 (24th ed. 1965), and had the same meaning at about the time the statutory provision of present concern was first enacted, see Funk & Wagnall, Practical Standard Dictionary of the English Language 416 (1922) ("1. The organ of vision. 2. The socket in which that organ rests, or the iris or pupil * * *."); Dorland, Medical Dictionary 470 (16th ed. 1932) ("organ of vision"); see also Maloy, Medical Dictionary for Lawyers 199 (1942) ("The eye or *eyeball*, * * * is the organ of sight or vision. A nearly spherical mass * * *." (Italics in original)). The word "organ," used by the quoted authorities in their definitions of "eye," itself means a "structure made up of various cells or tissues," Webster, Third New International Dictionary 1589 (1967), or a "part" of the body, Dorland, Medical Dictionary 906 (16th ed. 1932).

■ "Enucleation," in its medical sense, means "remov[al] without cutting into * * * ([as] the eyeball)." Webster, Third New International Dictionary 759 (1967), or "removal of the eyeball after the eye muscles and optic nerve have been severed," Dorland, Medical Dictionary 497 (24th ed. 1965), and its meaning has not changed since about the time of the pertinent statutory provision's first enactment, see Funk & Wagnall, Practical Standard Dictionary of the English Language 392 (1922) ("to extract from a sac without cutting"); Dorland, Medical Dictionary 438 (16th ed. 1932); see also Maloy, Medical Dictionary for Lawyers 186 (1942) ("remov[al] without cutting into as * * * the eyeball.").

Thus, in its ordinary usage, "eye" denotes a physical part or structure, an organ rather than the function of sight, while "enucleation" means a removal of that physical part or organ. So considered, there is a significant difference between "loss" of an eye and "blindness." Besides the distinction in I.C. § 72–313 between loss of eye and blindness, it should be noted that

I.C. § 72–311 speaks of a "loss of sight in both eyes."

Enucleation, it may be observed, involves a different physical loss than does blindness, for example "there usually remains with the average person [having a sightless natural eye] the hope that the advancement of medical science may provide a way for restoration of sight." Riegle v. Fordon, 273 A.D. 213, 214, 76 N.Y.S.2d 523, 524 (3d App. Dep't 1948), aff'd 298 N.Y. 560, 81 N.E.2d 101 (1948). There is too the inconvenience of an artificial eye which "must be * * * kept perfectly clean," Maloy, Legal Anatomy and Surgery 433 (1930). Enucleation a also "requires extreme care if a good cosmetic result is to be achieved." 6 Trauma 5:119 (1965).

Leach v. Grangeville Highway Dist., 55 Idaho 307, 41 P.2d 618 (1935), presented circumstances nearly identical to those of the present action. An industrial accident necessitated the enucleation of Leach's left eye which had lost ninety per cent of its vision before the accident. Under a statute [1] the same in all pertinent respects as I.C. § 72–313, the Industrial Accident Board awarded full indemnity for loss of an eye by enucleation, and the employer and its surety appealed, contending Leach "had lost, * * * 90% of the vision of his left eye and had [left] but 10% to lose." Id. at 312–313, 41 P.2d at 620. The Court rejected this contention and affirmed the Board's order, saying:

"[Claimant] is entitled to compensation, not because of loss of vision or of loss of earning power in consequence thereof.

He is entitled to specific indemnity for the loss of his eye by enucleation, as provided for in I.C.A., § 43–1113 [now I.C. 72–313.]" Id. at 313, 41 P.2d 620.

Other courts have considered the question here presented or questions similar to it, and although there is definite conflict, the majority view seems in accord with the Board's determination in the present case. See Blair v. Armour & Co., Mo., 306 S.W. 2d 84 (Ct.App. Kansas City 1957); Riegle v. Fordon, supra; 11 Schneider, Workmen's Compensation § 2346, at 739–742 (perm. ed. 1957); see also Burrock v. Tung Sol Lamp Works, 30 N.J.Super. 456, 104 A.2d 875 (Essex County Ct. 1954).

■ The terms "enucleation" and "blindness," and the distinctions between them are sufficiently clear, and support the Industrial Accident Board's conclusion that the legislature intended to provide by I.C. § 72–313 for two distinct eye injuries, impairment of vision and loss of a physical organ.

Appellants contend that I.C. § 72–323 [2] compels a result opposite to that reached by the Board. This statute, sometimes called the apportionment statute, was first enacted in 1941, Idaho Sess.Laws 1941, ch. 155, § 1, at 310, and so took effect after the *Leach* decision. Nevertheless, the statute does not affect the result in *Leach* on the issue in controversy.

■ The only provision of I.C. § 72–323 pertinent to the present action is the following:

"If the degree or duration of disability resulting from an accident is increased or prolonged because of a preexisting injury

1. Idaho Sess.Laws 1931, ch. 222, § 3, at 436–437; I.C.A. § 43–1113.

2. "72–323. *Deductions from preexisting injuries and infirmities.*—Except as provided in section 72–311, Idaho Code.
    "If the degree or duration of disability resulting from an accident is increased or prolonged because of a preexisting injury or infirmity the employer shall be liable only for the additional disability resulting from such accident.
    "Any compensation previously paid an injured workman for permanent disability

to any member or part of his body shall be deducted from the amount of compensation provided for the permanent disability to the same member or part of his body caused by a change in his physical condition or by a subsequent accident.
    "If death following an accident is contributed to by any condition or infirmity which existed prior to the date of injury, the board shall determine to what extent such condition or infirmity contributed to the death. The total benefits payable for accidental death shall be reduced accordingly."

or infirmity the employer shall be liable only for the additional disability resulting from such accident."

The pre-existing blindness of respondent's right eye in no way contributed to the necessity for its enucleation, according to the Board's unchallenged findings.

Order affirmed.

SMITH, McFADDEN and SPEAR, JJ., and DONALDSON, D. J., concur.