KARLENE DOGGETT, APPELLANT AND CROSS-APPELLEE, V. BRUNSWICK CORPORATION, APPELLEE AND CROSS-APPELLANT.

347 N.W.2d 877

Filed April 27, 1984. No. 83-759.

Jay L. Grytdahl of Robert E. O'Connor & Associates, for appellant.

Richard D. Sievers of Marti, Dalton, Bruckner, O'Gara & Keating, P.C., for appellee.

KRIVOSHA, C.J., WHITE, and CAPORALE, JJ., and McCOWN and BRODKEY, JJ., Retired.

CAPORALE, J.

The plaintiff employee, Karlene Doggett, appeals from the award on rehearing of the Nebraska Workmen's Compensation Court, which reimbursed her for certain expenses, ordered payment for future treatment, but denied other benefits. The defendant employer, Brunswick Corporation, cross-appeals, claiming Doggett's action should have been dismissed. We affirm the award and dismiss the cross-appeal.

On August 25, 1982, Doggett was injured when, while cleaning equipment in the employer's chemical room, acetone splashed into her left eye. She immediately flushed her eye at an emergency eye wash supplied on the premises by the employer. On September 13, 1982, again while cleaning machinery, Doggett splashed acetone into her right eye. As previously, she immediately proceeded to the emergency eye wash and flushed her eye with water. It is not disputed that both accidents arose out of and in the course of Doggett's employment with Brunswick.

On October 1, 1982, Doggett consulted Dr. Frederick Mausolf, an ophthalmologist, because of a burning and irritation of her eyes. The doctor concluded that she had blepharitis with keratitis sicca in both eyes; that is to say, an inflammation of the margin where the eyelashes come out, and of the glands which give secretion to the lashes, together with a dryness of the cornea, the part of the eye through which one looks, and the conjunctiva, which covers the white of the eye and the back surface of the eyelid. Doggett was placed on a treatment program which requires her to apply liquid teardrops and warm compresses to her eyes frequently during the day. She was also treated with antibiotics and is to apply an ointment to lubricate her eyeballs and

eyelids while sleeping. Doggett suffered no impairment of vision in either eye.

She apparently lost no worktime due to the injury. After October 18, 1982, she was transferred from the chemical room to another job because of her concern for her eyes. On April 29, 1983, she was laid off because of economic conditions. Doggett's eyes have remained subject to dryness, aching, and feelings of scratchiness. She claims that she would return to work at Brunswick if called back, but not in the chemical room.

Doggett presented a rehabilitation consultant who, based upon the recommendation of Doggett's physician that she should avoid employment in areas which exposed her to chemicals, dust, and dryness, testified that Doggett's access to employment has decreased. The consultant testified that prior to Doggett's eye problems, she would have been qualified for 39 percent of the jobs available in the labor market, while if she had to avoid jobs which would subject her to chemical-laden, dusty, or dry environments, she would be eligible for only 23 percent of those jobs. This is labeled by Doggett as a 41-percent decrease in her employability.

The three-judge panel of the compensation court, on rehearing, found that Dr. Mausolf's testimony supplied the necessary causal link between the accidents and the condition of Doggett's eyes. It awarded Doggett reimbursement of the medical and pharmaceutical expenses she had incurred, and ordered Brunswick to pay the cost of such future medical care and treatment as may be reasonably necessary as a result of the accidents. The compensation court further concluded Doggett was entitled to no other benefits.

Doggett assigns as error the compensation court's failure to find a loss of earning capacity, while Brunswick, in its cross-appeal, claims error in the finding of a causal connection between the present condition of Doggett's eyes and the accidents.

We deal first with Brunswick's assignment of error. Dr. Mausolf initially wrote in a report that, with reasonable medical certainty, the accidents either caused the present permanent condition of Doggett's eyes or aggravated a preexisting condition. It is true, as argued by Brunswick, that thereafter Dr. Mausolf expressed his opinion with less certainty, to the point where he spoke in terms that the accidents "could have" or "possibly caused" the condition. This situation is not, however, like that presented in *Riha v. St. Mary's Church & School, Inc.*, 209 Neb. 539, 308 N.W.2d 734 (1981), wherein the physician superseded his preoperative opinion that a causal relationship existed between the accident and the disability with a postoperative opinion that such causal connection did not exist. In *Riha* the physician found from the surgery he performed that the facts on which his preoperative opinion was based were not as he had thought them to be, and therefore recanted his preoperative opinion. Here, Dr. Mausolf did not change his opinion; he simply did not consistently state it as positively as when he first wrote it. There was no showing, however, that the facts were not as he originally perceived them to be or that he had for some other reason changed his mind. Where the testimony of the same expert witness given at different times is conflicting, it rests with the trier of fact to resolve the conflict, at least where the conflict does not arise out of bad faith motives. *Dickinson v. Mailliard*, 175 N.W.2d 588 (Iowa 1970); *American General Insurance Company v. Barrett*, 300 S.W.2d 358 (Tex. Civ. App. 1957); 32 C.J.S. *Evidence* § 572(1) (1964).

We have previously committed ourselves to the proposition that questions of causation are for the fact finder. *Heironymus v. Jacobsen Transfer*, 215 Neb. 209, 337 N.W.2d 769 (1983). We are also committed to the proposition that our standard of review accords to the findings of the compensation court the same force and effect as a jury verdict in a civil

case, and they will not be set aside unless clearly wrong. *Moore v. The Sisk Co.*, 216 Neb. 451, 343 N.W.2d 767 (1984). In view of Dr. Mausolf's opinion, weak as it is, it cannot be said the compensation court was clearly wrong in finding a causal link between the accidents and Doggett's present condition. Accordingly, we reject Brunswick's assignment of error and dismiss its cross-appeal.

In arguing her assignment of error Doggett assumes that the impairments to her eyes translate into a disability of the body as a whole and that she is therefore to be compensated on the basis of her claimed loss of earning power. Neb. Rev. Stat. § 48-121 (Cum. Supp. 1982); *Nordby v. Gould, Inc.*, 213 Neb. 372, 329 N.W.2d 118 (1983). Her assumption that the injuries and resultant condition of her eyes constitute an impairment to the body as a whole is incorrect.

*Brewer v. Hilberg*, 173 Neb. 863, 115 N.W.2d 437 (1962), applying the rule announced in *Carlson v. Condon-Kiewit Co.*, 135 Neb. 587, 283 N.W. 220 (1939), holds that the scheduled allowance for the loss of an eye is exclusive, and includes the loss of binocular vision which results from the loss of a single eye. In other words, the scheduled allowance includes all consequences which naturally follow from the loss of an eye or its loss of use, total or partial.

The most analogous case revealed by our research, though from another jurisdiction, is *Thomas Concrete Products v. Robinson*, 485 P.2d 1054 (Okla. 1971). Therein, the claimant was struck in the eye as a result of which the tear ducts became stopped. As a consequence, it became necessary for the claimant to frequently wipe tears from his eye to prevent infection and, on some occasions, to quit work because of impairment of vision when tears accumulated in the eye. Since the disability was confined solely to the eye and no other portion of the body was affected, the court held that the award

must be limited to a percentage of the scheduled loss of the eye as a member.

Since Doggett's impairments are limited to the structures of the eyes, we are here presented with impairments of two scheduled members.

The next question to be answered is whether the evidence supports a finding that she suffers any disability as a consequence of the accidents.

It has been said that the word "eye" in common usage means the organ of sight. *Gentry v. Bano, Inc.*, 91 Idaho 790, 430 P.2d 681 (1967); Webster's Third New International Dictionary, Unabridged (1968); Dorland's Illustrated Medical Dictionary (24th ed. 1965). So far as we have been able to determine, in each instance that compensation benefits have been awarded under our workmen's compensation law for the loss or loss of use of an eye, there has been a loss or diminution of vision. *Brewer v. Hilberg, supra; Gruber v. Stickelman*, 149 Neb. 627, 31 N.W.2d 753 (1948); *Bolen v. Buller*, 143 Neb. 237, 9 N.W.2d 204 (1943); *Ames v. Sanitary District*, 140 Neb. 879, 2 N.W.2d 530 (1942); *Carlson v. Condon-Kiewit Co., supra.* In this case the accidents produced no loss or diminution of vision in either eye. Therefore, there has been no loss of use of, or disability to, either eye.

Since there can be no disability benefits payable in the absence of disability being suffered, the issues as to whether evidence of loss of earning power is relevant under the provisions of § 48-121(3), dealing with multiple-member disability, and whether the evidence offered in this case proves such are not before us.

The award of the compensation court being correct, it is affirmed.

AFFIRMED.