412 P.2d 297

Deloris **FLANNERY** and Minor Children, Petitioners,

In the Matter of James E. Flannery, deceased,

v.

The **INDUSTRIAL COMMISSION** of Arizona, Respondent Insurance Carrier, Coca-Cola Bottling Company of Tucson, Arizona, Respondent Employer.*

No. 1 CA-IC 82.

Court of Appeals of Arizona.

March 18, 1966.

Rehearing Denied April 8, 1966.

Review Denied May 10, 1966.

Rees, Estes & Browning, by Paul G. Rees, Jr., Tucson, for petitioners.

Robert K. Park, Chief Counsel, by Joyce. Volts, Phoenix, for respondents.

STEVENS, Chief Judge.

James E. Flannery, then 42 years of age, was a route supervisor for the respondent employer in the City of Tucson. His responsibilities as route supervisor required that he be on call 24 hours a day and to enable him to meet these responsibilities, he customarily had a company truck at his

---

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 8338. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

home overnight. The night of 1-2 December 1960, was no exception in this regard. On the night of 1 December he returned home in the neighborhood of eight o'clock, ate his dinner, fell asleep watching television, then slept soundly until his wife awakened him for breakfast and his return to his place of employment. It was early in the working day of 2 December that he departed from his residence for his place of employment, driving the company truck. The truck did not start promptly and Flannery had some difficulty in keeping the motor running in the area immediately adjacent to his home. Shortly thereafter, and before arriving at his place of employment, he died at the wheel of his truck, leaving surviving his widow and 8 children, the oldest of whom was 13 years of age at the time.

For approximately 12 years Flannery had worked for another bottling company in Tucson. He was not happy with his lack of recognition and his lack of opportunity and in March of 1960, he became employed as a route supervisor by the company for whom he was working at the time of his death. With Coca-Cola the nature of his work changed from the basically heavy work of the route man to the reduced physical activity of a supervisor who engaged in some of the physical activity of a route man. His responsibilities with Coca-Cola subjected him to a greater emotional strain. He was exceedingly anxious to do well in his new job partly to show his former employers that he had capabilities which they did not recognize. The evidence indicated that Flannery worried about his job and its problems but that with it all he was much happier in his new employment. Shortly before his death, Coca-Cola in Tucson was engaged in a concentrated promotional scheme which resulted in considerably increased pressure. This promotional venture had not been completed by the 2nd day of December. The petitioner urges that the unusual stress and strain incident to the promotional campaign was not a normal condition of employment and that the problem of the operation of the truck on the morning in question were material factors in connection with Flannery's death.

An autopsy was performed and a report thereof was prepared. The portion of the report relating to Flannery's heart is as follows:

"The anterior descending branch of the left coronary artery shows marked sclerosis. There is a recent occlusion at a point 2 cm. from its origin. The lumen is markedly narrowed at this point by a sclerotic process. Elsewhere, there are patchy areas of sclerosis. There is an old grey scar along the anterior portion of the interventricular septum which extends over a short distance into the left ventricular wall. No recent infarction is noted."

"PROBABLE CAUSE OF DEATH: Coronary thrombosis due to coronary sclerosis."

The doctor who performed the autopsy testified at a formal hearing and his testimony is reduced to the following running commentary. Portions of the commentary are direct quotations.

Death was caused by coronary thrombosis due to arteriosclerosis. There were no other causes. The heart was examined and doctor found the sclerosis or hardening of the arteries. This was most marked in the coronary artery.

"This blood clot probably started its formation about several hours prior to the time of death, and it took place at a very narrow part of the artery. The artery itself varies in its caliber throughout its course, and as a result of its hardening this occlusion took place at one of the narrower portions, and gradually filled up until the lumen or passageway was blocked. It builds up over a period of time. I would say that what I saw here probably took several hours to build up."

The old gray scar "is the site of an * * * old blockage, and the normal heart muscle has been replaced by scar tissue. * * * I would say a matter of a year or years. It was a rather

large scar, * ·* * this was definitely an old scar and that had weakened the entire heart action". It would not have been contributory to the formation of the occlusion. No recent infarction was found. No other pathology was found in this patient that might have contributed to his demise.

"The lumen is the passageway itself. * * * The lining is called the intima. * * * I don't know that I can say exactly what starts this thin collection to form on the surface of the intima. * * I don't know what actually initiates this first clot formation. Now, once a clot starts to form then the state is set for additional fibrins, which is the material to be deposited, and for additional red cells and white cells and platelets to become enmeshed in this clot. * * * That may close off the lumen." This is what happened.

There are certain procedural matters which we must first consider. All parties concede that the time consumed in the processing of this matter is longer than usual and both parties accept some responsibility in this connection. In January 1962, there was an award of no compensation which award carried a 20 day clause. A petition for rehearing was promptly filed and at the rehearing evidence was taken including lay evidence, the testimony of the pathologist and the testimony of a medical doctor whose specialty is diseases of the heart. In July 1963, there was a further award also denying compensation and this had likewise carried a 20 day clause. A petition for rehearing was again filed and the petition was accompanied by a letter from the attorney, which letter stated in part:

"I really don't have anything more I can put on in the way of evidence on a Petition For Rehearing, and, therefore, am going through the form of filing a Petition For Rehearing, but indicating to you that I know of no further evidence to put on.

"I have already drawn my Petitions to take this matter to the Supreme Court, but felt I ought to at least file a Petition For Rehearing, rather than take a chance that I could petition for certiorari without going through the rehearing process, there being no further evidence on our part to present."

Well beyond the period of 30 days next following the award, the Industrial Commission gave notice of an additional hearing at which it planned to call two heart specialists. At the hearing the record was preserved by the following objection by counsel:

"I would like only to renew the objections made in my letter to the hearing on the ground that there was no requested hearing, and in fact I have expressly waived the hearing and asked that the matter be submitted."

The same objection is adequately preserved in the proceedings before us and the petitioner urges that this Court disregard the testimony of the two doctors presented at the last hearing. Following the conclusion of this hearing there was a further award denying compensation, this award carrying a 30 day clause. A timely petition for review by certiorari was processed.

The 20 day clause has as its basis Industrial Commission Rule 37, which Rule states in part:

"Any party aggrieved by any award or decision of the Commission granting or denying compensation must file his application for a rehearing thereof * * * within twenty (20) days after the service of the award or the decision complained of. * * *."

The 30 day clause has a statutory basis being § 23-951. The import of the statute has not been changed with the recent amendment which vests jurisdiction in the Court of Appeals and the statute is quoted in part as the same appeared at those times material to the matter we are now considering. Subsection A thereof states in part:

"Within thirty days after an application for a rehearing is denied, or if the application is granted, within thirty days

after rendition of the decision on a rehearing, any party affected thereby may apply to the supreme court for a writ of certiorari to review the lawfulness of the award."

The Industrial Commission relies upon its Rule 39, the first sentence thereof being as follows:

"The Commission on its own motion may order a hearing or rehearing in any claim, case or matter within its jurisdiction. * * *"

In the case of Ross v. Industrial Commission, 82 Ariz. 9, 307 P.2d 612 (1957), we find the following statement:

"It seems to us it is implicit within the provisions of section 23–951, subd. A, supra, that an injured workman must first file a petition for rehearing and procure a commission ruling thereon before he can have the matter reviewed in this court. * * *.

"We hold that under the facts here shown this court has no jurisdiction to review the award in the instant case, for the reason that petitioner did not exhaust his administrative remedy. It is our considered opinion that the pronouncements on this point made in the Hershkowitz cases are unsound in principle and should be and they are hereby expressly overruled."

■ In Wammack v. Industrial Commission, 83 Ariz. 321, 320 P.2d 950 (1958), we find the following statement at Page 327 of the Arizona Reports, at page 954 of 320 P.2d:

"It has been construed to mean under the doctrine of exhaustion of administrative remedies that the Commission must be given the opportunity to correct its errors before this court will entertain a writ of certiorari to review the lawfulness of the award. * * *

"The question then arises whether the Commission has jurisdiction to further reconsider its decisions. As to this, the answer must be in the affirmative. The power to reconsider is inherent in the power to decide. * * * The Commission had the jurisdiction to entertain the second motion and the power to grant or deny it. The granting of a first motion to rehear the award has the effect of setting aside or vacating that award and when on rehearing the cause on its merits, the subsequent award supersedes the former. An aggrieved party has the same right to move against it as he had the right to move against the former award. When a second or a subsequent motion for rehearing is applied for, the Commission need not grant the motion but may deny it. * * * *While a party has the privilege of applying for a second rehearing, he is not compelled to do so in order to exhaust his administrative remedies.*" (Emphasis supplied)

These principles can be stated as follows:

1) When an award has been made, there must be at least one petition for rehearing which has been ruled upon by the Industrial Commission as a condition precedent to the issuance of a writ of certiorari. Therefore, the first award contains the 20 day clause.

2) If there has been a motion for rehearing which has resulted in the issuance of a second award which also carries the 20 day clause, a party to that award has the alternative of filing a second petition for rehearing within the 20 days or the party can ignore the rehearing provisions and seek a writ of certiorari so long as this is done within the required 30 days.

■ While we are not called upon to determine a third principle, it appears to us that it would be logical to state that:

If the Industrial Commission issues a second award and in its action used a 30 day clause in place of a 20 day clause, the Industrial Commission cannot thereby prevent a party from electing to not file a writ of certiorari and the party may in lieu thereof, make a timely application for a rehearing.

■ In other words, § 23–951 as amended, requires that the administrative proce-

dure of a request for a rehearing be utilized following the first award. Thereafter awards could well carry a combined notice of the right to apply for a rehearing within 20 days, the notice further stating that the party has the alternative right to apply for a writ of certiorari within 30 days. The purpose of the notice is to inform the uninformed rather than to have any legal significance in relation to the rights of the parties to the Industrial Commission proceeding.

Had the petitioner disregarded the 20 day clause in the July 1963 award and proceeded with the filing of the petition for the writ of certiorari which was then in preparation, filing the same within the statutory 30 day period, the jurisdiction would have passed from the Industrial Commission to the Court and the Industrial Commission would have been powerless to hold the additional hearing complained of by the petitioner. We are not called upon to express an opinion as to the situation had the Industrial Commission given a Rule 39 notice before the filing of the petition for certiorari, that is to say, whether such notice would have defeated for the time being the privilege of proceeding by certiorari as authorized by § 23–951.

There being jurisdiction to conduct a further hearing after the petition for rehearing addressed to the July 1963 award was filed, there was jurisdiction to call the two doctors as witnesses and the objection of the petitioner was not well taken.

We believe that there is no useful purpose in a further detailed analysis of the medical testimony in this matter. It is our opinion that a detailed statement of the evidence would not be a guide line for future similar cases. The record discloses a conflict of medical testimony as to the effect of the stress and strain of working conditions and their relation to the cause of Flannery's death.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7434. The matter was referred

There are distinguishing aspects of the case at bar and the recent heart cases of Russell v. Industrial Commission, 98 Ariz. 138, 402 P.2d 561 (1965); Thiel v. Industrial Commission, 1 Ariz.App. 445, 404 P.2d 711 (1965); Roberts v. Industrial Commission, 1 Ariz.App. 449, 404 P.2d 715 (1965). In the instant case, there was a conflict of medical testimony as to whether the conditions of employment were a producing cause of death.

The evidence supports the award and the award is affirmed.

CAMERON and DONOFRIO, JJ., concurring.