419 P.2d 542

Jesus Jose **FERNANDEZ**, Petitioner,

v.

The **INDUSTRIAL COMMISSION** of Arizona, and Kennecott Copper Company, Respondents.

No. 1 CA–IC 93.

Court of Appeals of Arizona.

Nov. 1, 1966.

Opinion Supplemented Dec. 9, 1966.

See 4 Ariz.App. 445, 421 P.2d 341.

Gorey & Ely, by Stephen S. Gorey, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, by Howland F. Hirst, Dee-Dee Samet, Phoenix, for respondent, The Industrial Commission.

Fennemore, Craig, Allen & McClennen, by John J. O'Connor, III, Phoenix, for respondent, Kennecott Copper Co.

CAMERON, Judge.

This case is before the Court on a writ of certiorari to review the lawfulness of an Award and Findings of the Industrial Commission of Arizona. The award denied the reopening of petitioner's claim on the grounds that he failed to prove he suffered a new or previously undiscovered disability related to the industrial accident of January 1961.

Although he is a native-born citizen, petitioner speaks and understands only Spanish. Because of the language barrier, he has been handicapped in the prosecution of his claim.

Petitioner was injured while unloading scrap iron from a truck at the respondent employer's mine, in January, 1961. The claim was accepted as compensable. Petitioner underwent surgery in February, 1961, for the removal of a disc and fusion of a portion of the spine. The case was closed with an award of 15% general physical functional disability with no loss of earning capacity.

Petitioner attempted to return to work, but was unable to do so, and in 1963 made application to reopen his claim. The Commission authorized further medical examination, and on the basis of the board's findings, petitioner underwent surgery a second time. This proved to be exploratory, and revealed a solid fusion. After he recovered from this surgery, an award was issued, reiterating the holdings in the first award.

A petition for rehearing was filed and was denied for lack of medical evidence to support the allegation that petitioner was in need of further treatment. This action was later rescinded and a hearing granted by the Commission.

Petitioner was examined by Dr. Lytton-Smith prior to the hearing. He reported that in his opinion petitioner was able to work, but needed a breaking-in period after his long period of inactivity.

A hearing was held in July, 1964, on the petition for rehearing, which had alleged that petitioner's condition was not stationary, that he was in need of further medical care, and also that petitioner is partially, if not totally, disabled from work.

Lay and medical testimony introduced at the hearing indicated that petitioner was in fact disabled. The Spanish-speaking doctor who had examined him testified that he would have difficulty lifting any weight over 25 pounds. Petitioner testified that when he was called back to work following his second surgery, he was "not passed" on his first physical examination, but three days later was re-called and "passed" without a further examination. He testified that he was returned to work as a member of the labor pool, due to the senority requirements of the union contract, and was assigned 8 hours work digging with a pick and shovel. Prior to the accident, he had been a boilermaker's helper. The duties were substantially different, although as a boilermaker's helper he was required to do heavy lifting. He testified that he finished his first day of 8 hours at hard labor on his knees, and was bedridden with pain for days afterwards.

During petitioner's testimony at the hearing, there was some difficulty with the interpreter who was translating his statements. Petitioner's wife, who is bilingual, claimed that the interpreter had translated some of the testimony in a manner which materially changed its meaning.

Petitioner's wife testified in detail concerning her husband's disabled condition, his pain and suffering following his attempts to work at the employer's jobs or to do work around the home. She stated that she drove the car and accompanied petitioner while he sought lighter work, and told of his lack of success due to his physical disability and the language barrier. She also testified that she had examined the doctor's report on the occasion when her husband had been "passed" as capable of working, and that in fact the report was qualified, limiting him to work requiring no lifting or bending and mentioning the tenderness over his incision.

Petitioner's wife also testified to another occasion of difficulty over translation, when the translator for the doctor at the company hospital had misinterpreted certain statements made by the petitioner to the doctor. On that occasion he had said that he had been sent off the job by the foreman as being unable to do the work required. The interpreter allegedly related to the doctor that petitioner, "had told the boss he was going home".

The Referee issued his report following the hearing, finding: (1) That in his present physical condition, claimant is not able to be gainfully employed; and (2) that the evidence indicates claimant is in need of further medical care.

He recommended a medical consultation.

The Commission issued an order finding that "further examination is indicated before a decision on rehearing is issued", and ordering that such examination be provided.

The Commission's medical advisor recommended psychiatric evaluation for the petitioner, and he was referred to Dr. William B. McGrath.

Petitioner was examined by Dr. McGrath in September, 1964. Dr. McGrath's report states, "The spread of symptoms to involve the left upper extremity suggests a conversion reaction. It does not result from the accident of January 28, 1961. But more likely from the conflict situation in which the patient finds himself." The report itself does not indicate it, but the record suggests that this examination was carried on through an interpreter.

Nothing further intervened in the file, and on 13 October 1964, the referee filed a Supplemental Referee's Report reversing his former position and recommending an award finding that:

"The claimant is physically able to perform his regular work as a boilermaker's helper. He has suffered no loss of earning capacity."

As the "Basis for Conclusions and Recommendations" the Referee then reasoned substantially as follows:

1. Orthopedic specialists indicate petitioner is capable of performing the work of a boilermaker's helper. Dr. McGrath reported petitioner had no psychiatric condition attributable to the accident.

2. The testimony at the 17 July 1964 hearing describes petitioner's physical condition when he returned to work. Nevertheless, due to the union contract, petitioner returned as a laborer digging ditches with pick and shovel, work "substantially different" from the work of a boilermaker's helper.

Therefore: Commission is justified in accepting opinions of orthopedic specialists, and finding he is able to perform his "regular work".

The Commission issued an award based upon the Referee's supplemental report, finding no loss of earning capacity. This was protested and a petition for rehearing was filed on behalf of petitioner by his counsel. Shortly thereafter, petitioner dismissed his counsel, and sent a certified letter notifying the Commission of this decision.

The petition for rehearing was denied on 18 January 1965 (date of service on the petitioner). Petitioner went to the Governor's Office on 5 February 1965, and was referred to the Commission. The Governor's Office sent a note to the Commission's Claims Manager directing him to "talk to this man and see what his problem is. It is quite serious and he has received a run-around." That same day the Claims Manager prepared a memorandum stating that the status of petitioner's claim was explained to him in Spanish at the Commission's office on 5 February 1965, namely, "that there existed at the present time two courses of action:

"(1) The filing of a writ of certiorari in the Supreme Court on or before February 17, 1965,

or

"(2) The filing of a petition and application for reopening of his claim and his responsibility to furnish medical evidence in support of said petition."

"He was furnished with proper forms for petitioning to reopen." The memorandum contains a notation that the "Office of the Governor was informed by telephone as to status and interview."

Petitioner completed the form furnished to him on 5 February 1965 by the Commission, and filed it with them by mail. It was received on 9 February 1965, 21 days after service upon him of the award.

He stated on the form:

"Further medical treatment is needed and temporary compensation benefits due to increased disability from accident. Dr. Daniel Russo will furnish medical report."

The Commission treated this as a Petition to Reopen, and has held that the petitioner must prove facts necessary for reopening;

that is, a new, additional or previously undiscovered disability.

5 February 1965 was within twenty days of service of the award upon the petitioner.

This Court discussed the significance of the 20 day clause and the 30 day clause in Flannery v. Industrial Commission, 3 Ariz.App. 122, 412 P.2d 297, 300, 301 (1966). There we explained:

"In other words, § 23–951 as amended, requires that the administrative procedure of a request for a rehearing be utilized following the first award. Thereafter awards could well carry a combined notice of the right to apply for a rehearing within 20 days, the notice further stating that the party has the alternative right to apply for a writ of certiorari within 30 days. The purpose of the notice is to inform the uninformed rather than to have any legal significance in relation to the rights of the parties to the Industrial Commission proceedings."

■ In the *Flannery* case (supra), the question of whether a 30 day clause demands that petitioner seek a writ of certiorari and precludes a petition for rehearing was not before the court but to round out the discussion of the effect of the two clauses the court included as dicta the following, which we now adopt as our opinion in the instant case:

"If the Industrial Commission issues a second award and in its action used a 30 day clause in place of a 20 day clause, the Industrial Commission cannot thereby prevent a party from electing to not file a writ of certiorari and the party may in lieu thereof, make a timely application for a rehearing."

Petitioner was within the 20 day period and was entitled to make an application for rehearing when he went to the Industrial Commission office on 5 February 1965. He was not advised that he had this right nor of the distinction between a "rehearing" and "reopening". He was given a form for a Petition for Reopening or Readjustment of Claim and told that he could seek a writ of certiorari to the Supreme Court within 30 days, or petition (without a time limit) for a reopening of his claim. He was not given a form for petition for rehearing. Petitioner completed and filed the form for reopening.

■ The petitioner was prejudiced in the advice and the forms that he received from the Commission because, had a petition for rehearing been timely filed, the petitioner would have to show merely that the previous finding and award of the Commission was incorrect. By contrast, a petition for reopening requires the petitioner to accept the previous findings of the Commission (from which he did not ask either for a rehearing or a writ of certiorari), and show new additional, increased, or previously undiscovered disability resulting from his industrial accident.

Petitioner was not on 5 February represented by counsel, and as we stated before:

"As heretofore pointed out, Rules 5 and 8 admonished the workman that he does not need service of an attorney and that he has no rights before the Commission except in relation to the forms supplied by the Commission." Quirk v. Industrial Commission, 3 Ariz.App. 84, 412 P.2d 81, 87 (1966).

■ It is true that a petitioner who elects to proceed without an attorney must, many times, suffer the defects and dangers inherent in self-representation, but in workmen's compensation cases where the Commission indicates that representation by counsel is not needed as indeed the workmen's compensation statute would indicate, then any advice given by the Commission to a claimant, as in the instant case, must fairly apprise the claimant of his rights, and failure to do so can result in this Court setting aside the award, as we do herein where

the file indicated petitioner has been prejudiced by the misleading advice.

The award is set aside.

STEVENS, C. J., and DONOFRIO, J., concur.