433 P.2d 63

Lillian C. HARRINGTON, widow, Michael Anthony Harrington, Minor Child, in the Matter of Donald J. Harrington, Deceased, Petitioners,

v.

The INDUSTRIAL COMMISSION of Arizona, and State Farm Mutual Automobile Insurance Company, Respondents.

No. 1 CA–IC 141.

Court of Appeals of Arizona.

Nov. 9, 1967.

McGillicuddy, Johnson, Rich & Robbins, by Chris T. Johnson, Phoenix, for petitioners.

Robert K. Park, Chief Counsel, by Glen D. Webster, Phoenix, for respondent Industrial Commission.

Fennemore, Craig, Allen & McClennen, by Richard A. Miller, Phoenix, for respondent, State Farm Mut. Auto. Ins. Co.

CAMERON, Chief Judge.

This case is before the Court by writ of certiorari granted on petition of the widow of Donald Harrington, deceased.

The facts necessary for a determination of this matter are as follows. Donald J. Harrington was 45 years of age at the time of his death on 7 July 1962. He had been employed by State Farm Mutual Automobile Insurance Company continuously since August 1952 and was a Superintendent of Claims in the Phoenix office in July 1962.

Mr. Harrington had shown symptoms of angina pectoris since 1955, and in March 1958 suffered a posterior, inferior transmural myocardial infarction (heart attack). As a result of this attack he was hospitalized for several weeks.

During the period from January 1953 to September 1959, he was under the care of an attending physician in Tucson, Arizona, Dr. Goodin, for an initial problem of obesity and later for his cardiac condition. As a result of his myocardial infarction in 1958, he was placed on anticoagulant drugs, one of which was Dicumerol, and was continued on this anticoagulant drug until the time of his death. Mr. Harrington's hours of work were from approximately 8:30 a. m. to 5:00 p. m. The evidence is uncontradicted that Mr. Harrington was totally absorbed in his work, and that he had a definite tendency to consider any setback of the company as a personal setback to himself, combined with a tendency to blame himself for all adverse results which the company sustained. The widow alleges that the decedent was working under unusual stress and strain in the month immediately prior to his death. The record supports this contention.

The decedent lunched with a fellow-employee on 6 July 1962, the day before his death. That fellow-employee testified that the decedent complained of not feeling well during lunch. The decedent left work early that day, about 3:30 or 4:00 p. m. He explained that he had a headache, and he was going home. He had telephoned his wife early in the morning of that day and complained of a headache.

He arrived home about 4:30 and went to bed about 10:00 p. m. that evening after having dinner with his next door neighbors and friends. About 2:00 a. m., 7 July 1962, he showed signs of physical distress. Dr. Kober, a cardiologist and his attending physician, was called about 9:30 a. m. that morning. He made arrangements for Mr. Harrington to be admitted to a hospital in the afternoon. However, after Dr. Kober left, the decedent took a turn for the worse, and died while enroute to the hospital in an ambulance. Dr. Kober signed the death certificate, and gave as the cause cerebrovascular accident (hemorrhage) due to generalized arteriosclerosis. No autopsy was performed.

The issue presented to this Court for determination is whether the award of the Commission is reasonably supported by the evidence.

As we stated in Thiel v. Industrial Commission, 1 Ariz.App. 445, 447, 404 P.2d 711, 713 (1965):

"In order to establish a compensable claim petitioner must sustain the burden of proving a recognizable causal connection between the employment and the accidental injury, * * * (citation omitted). This fact must be the only possible inference drawable from the evidence in order for us to set aside the award denying compensation." See also Roberts v. Industrial Commission, 1 Ariz.App. 449, 404 P.2d 715 (1965).

In order to determine whether the petitioner has sustained her burden of proving the causal relationship between the employment and the accidental injury, we must examine the medical evidence which was before the Commission at the time they issued their award. Five doctors submitted opinions as to the medical relationship between the decedent's employment and his death. Doctors Cohen, Hamer, and Nenad appeared at Commission hearings and testified. Doctors Kober and Iaconetti submitted written opinions. Dr. Monroe Green submitted an opinion by letter stating that there was a causal relationship between decedent's employment and the accident, then testified at the hearing that there was not.

In cross-examination of Dr. Hamer and Dr. Nenad, the claimant's attorney advanced a theory that the unusual stresses of decedent's employment caused him to become emotionally upset, causing a rise in his blood pressure and consequent rupture of a cerebral artery. Both of these doctors testified that even assuming this theory was possible, the hemorrhage would occur immediately after the emotional stimulant, and would not have a delayed reaction, or produce a cumulative effect. Dr. Hamer testified that there was no evi-

dence in the record to indicate that the decedent suffered from high blood pressure or hypertension.

 It is our opinion that extensive quotations from the medical testimony would not add guidelines of value to the law, as this case was unique upon its facts. We have examined the extensive record in this case, and it is the opinion of the Court that the evidence reasonably supports the award of the Industrial Commission.

The award is affirmed.

DONOFRIO and STEVENS, JJ., concur.