404 P.2d 711

**Ann THIEL, Widow, and minor children, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent Insurance Carrier,\* American Investment Life Insurance Co., Respondent.**

**No. 1 CA–IC 39.**

Court of Appeals of Arizona.

July 29, 1965.

Rehearing Denied Sept. 14, 1965.

Chris T. Johnson and Edgar M. Delaney, Phoenix, for petitioners.

Courtney L. Varner, Phoenix, for respondents.

CAMERON, Judge.

The petitioners, being the widow and three minor children of Howard Thiel, brought a Writ of Certiorari to review the award of the Industrial Commission denying death benefits.

At the time of his death, Howard Thiel was the comptroller for the respondent American Investors Life Insurance Company in its home office in Phoenix. The evidence indicates that Howard Thiel, as comptroller, not only worked long and hard for his company, but was emotionally involved with the problems the company was experiencing. It was not unusual for him to put between fifteen and eighteen hours a day at the office and in February

---

\* The Petition was filed with the Arizona Supreme Court and assigned that Court's Number 8630. The Arizona Supreme Court issued its Writ of Certiorari. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

of 1963, he worked straight through one week-end from Friday until Monday morning when he was relieved by his assistant.

The company itself was in serious financial difficulty and was losing approximately $300,000 a year. There was also an indication that one of the officers was embezzling money from the company, and the deceased, as the comptroller, was very concerned about this. The head offices of the company had moved from Houston to Phoenix about the middle or latter part of 1962, and some of the records had been lost, causing additional worry. The deceased had also been worrying about getting a financial statement ready by the end of February, and had spent many overtime hours doing this. The evidence also indicates that as a result of the intensive effort in getting out the annual financial statement, that the normal routine had been neglected and that much of the work had backlogged. This, as indicated, created a great emotional stress and strain upon the deceased.

That Howard Thiel was under extreme pressure due to his employment and position with the company there can be no doubt, and on 5 March, 1963, he suffered what has been described as a myocardial infarction. The deceased saw a doctor on that date, and the doctor prescribed certain medicants and advised that the deceased refrain from smoking, drinking and to greatly restrict his physical activity as well as the hours of his work. The evidence would indicate that Howard Thiel thereafter reduced the number of hours spent at the office, although he did, on occasion, take some papers home for work at night. The evidence also indicates that Howard Thiel did not follow the doctor's advice concerning smoking, drinking and other physical activity.

Testimony was also more than sufficient to indicate that if Howard Thiel worked long and hard for his company, and worried about the company's affairs, he played equally as hard and had worries and problems other than office problems.

On Saturday, 31 March, 1963, the deceased spent the day working at the company's office until noon. He came home and after spending what was described as a "leisurely" Saturday afternoon and Sunday, he visited friends Sunday evening with his wife. The friends' house was nearby and as they were walking home he suffered a second myocardial infarction. An ambulance was called and he died on the way to the hospital. At the time of his death, Howard Thiel was 30 years of age.

If the life of Howard Thiel was unusually short, the time it took the respondent Industrial Commission to adjudicate this claim was unnecessarily long. Petitioners' claim for compensation was received by the Industrial Commission on 5 July, 1963. On 23 December, 1963, the application for death benefits was denied. Notice of protest of the award was received 10 January, 1964, and petition and application for rehearing was filed 30 January, 1964. Hearings were set 6 April, 4 June, 11 August and 3 September, 1964. All were postponed, the first three at the request of the Industrial Commission and the last at the request of the attorney for the petitioner.

A Writ of Mandamus was granted by the Supreme Court of Arizona, and the Commission was ordered to have a rehearing in the above matter on 7 December, 1964, and to "promptly and expeditiously proceed to a final determination in accordance with the facts and law applicable." Thiel v. Industrial Commission, 97 Ariz. 49, 396 P.2d 617 (1964). Hearing was held 7 December, 1964. At that hearing, three doctors testified concerning the death of Howard Thiel, and in response to hypotheticals all indicated a causal connection between the fatal myocardial infarction and the work that Howard Thiel was performing for the respondent company prior to his death.

At the close of the hearing 7 December, 1964, the referee, not satisfied with the results, set out to get more opinion evidence and set another hearing for 28 December,

1964. The petitioners filed another Writ of Mandamus with the Arizona Supreme Court which was granted and the Industrial Commission was ordered to follow the decision of the previous writ, and make a final decision by 24 December, 1964. On 24 December, 1964, the Commission denied the claim of the widow and three children, and petitioners bring this Writ of Certiorari.

It should be noted that the attorneys for the fund attempted to file, on Saturday or Sunday before the hearing, Monday, 7 December, 1964, some seven affidavits, in face of a demand made on 24 November, 1964, by the petitioner, to allow inspection of any affidavits in time to allow for preparation for the hearing. Attorney for petitioner did not object to the admission of affidavits made by witnesses who had been subpoenaed and to which he would have an opportunity to cross examine. He did object to the affidavits of three individuals who had not been subpoenaed by the Commission. These seven affidavits are in this voluminous file, though they alone do not contain any stamp indicating date of receipt by the Industrial Commission and receipt into the file.

Petitioner originally assigned the handling of the affidavits and the admission without right of cross examination as one of the errors in his brief. He, however, waived this objection at oral argument, and we do not have to concern ourselves at this time, but would call the reader's attention to the cases of Avenente v. Smouse, 1 Ariz.App. 24, 398 P.2d 932 (1965), Gomez v. Industrial Commission, 72 Ariz. 265, 233 P.2d 827 (1951), Forman v. Creighton School District No. 14, 87 Ariz. 329, 351 P.2d 165 (1960).

 This brings us to the central question in this matter, and that is whether or not the evidence before the Commission is such that the only logical conclusion that the Commission could draw from said evidence was that the death of the decedent was caused in whole or in part by his employment. The rule has been well stated by the Arizona Supreme Court:

"In order to establish a compensable claim petitioner must sustain the burden of proving a recognizable causal connection between the employment and the accidental injury, or more specifically in a case such as this, he must sustain the burden of proving that the exertion of his job precipitated the heart attack. See Jones v. Industrial Commission, 81 Ariz. 352, 306 P.2d 277. This fact must be the only possible inference drawable from the evidence in order for us to set aside the award denying compensation." Hudgens v. Industrial Commission, 83 Ariz. 383 at 384, 321 P.2d 1039 at 1040 (1958).

 It is not the duty of the respondent Industrial Commission to find that the employment conditions of the deceased were *THE* cause of the two "heart attacks", but merely that the conditions of employment were *A* cause.

"Where a worker died from a heart attack, if his activity on the job precipitated the heart attack, or accelerated death, the petitioner meets the burden of proving the causal connection between his employment and the decedent's death. In Revles v. Industrial Commission, 88 Ariz. 67, 352 P.2d 759, this court held:

'*Second*, an industrial injury need not be the *sole* cause of death, in order to entitle decedent's dependents to death benefits, as long as it appears that the injury contributed to and accelerated the inevitable.' "

Russell v. Industrial Commission, 98 Ariz. 138, 402 P.2d 561 at 564 (1965).

In determining whether or not the evidence is such that the only reasonable conclusion to be drawn from the facts is that the employment of the decedent contributed to or was in some way a causal factor in the myocardial infarctions which occurred 5 March, 1963 and 1 April, 1963,

we must refer to the expert testimony of three medical doctors who testified at the hearing 7 December, 1964. All three were in complete agreement that the activities of the deceased working as he did under extreme pressure and for long hours, contributed to the myocardial infarction of 5 March, 1963, and to his ultimate death, 1 April, 1963. The first doctor to testify, Allen T. Cohen, M.D., stated:

"It appeared to me that the type of employment in which he was engaged was extraordinary in that the demands made upon him were more than what we would regard as average and certainly conceivably adverse to an individual with this type of heart disease.

"I frankly think that if he was involved in a job in which the stresses and strains were nil it is reasonable to conclude that he might have lived longer."

The testimony of Dr. William L. Hullen, M.D., stated as follows:

"Question: And that in some manner you feel this overwork and stress and strain did contribute to his untimely death even in some minute amount on April 1?

"Answer: I would have to say yes."

Monroe H. Green, M.D., a surprise witness who was allowed to testify over the objections of the attorneys for petitioner, testified as follows:

"Answer: You have a new fact. You said he had an infarction on March 5th. This was not mentioned before. If he had a myocardial infarction on March 5th he sure as hell should not have gone back to work at all.

"If he had a myocardial infarction on March 5th, then going back to work most certainly contributed to his death even if he were working four hours a day or one hour a day. This is predi-cated on the 'if' of a myocardial infarction on March 5th, which was not mentioned previous to this."

Our Court has stated as follows:

"It is the law in this state that in order for the petitioner to establish a compensable claim he must sustain the burden of proving a recognizable causal connection between his employment and the accidental injury, or more specifically, in a case such as this he must sustain the burden of proving that the work and exertions of his job precipitated the heart attack. Hudgens v. Industrial Comm., 83 Ariz. 383, 321 P.2d 1039; and Jones v. Industrial Comm., 81 Ariz. 352, 306 P.2d 277. The following from our recent opinion in Helmericks v. AiResearch Manufacturing Co., 357 (sic) Ariz. 152 [88 Ariz. 413], 357 P.2d 152, 154, is controlling in this case:

'This Court has uniformly held that a finding of the Commission is conclusive upon this Court unless it has no support in the evidence. [Citing cases.] We recently said that "For us to * * * find a fact, the evidence must be such that there is but one possible inference to be drawn therefrom." Gronowski v. Industrial Commission, 81 Ariz. 363 366, 306 P.2d 285, 286–287.' "

Fendell v. Industrial Commission of Arizona, 89 Ariz. 180 at 182, 183, 359 P.2d 988 at 989 (1961).

■ In the instant case, the evidence before the Commission is such that the only rational conclusion that may be drawn from the evidence presented is that there was a causal connection between the pressure, strain and overwork of the decedent's employment and the myocardial infarctions of 5 March, 1963 and 1 April, 1963. The finding of the respondent Industrial Commission that the death of Howard Thiel "was in no way causally connected with

his work", was arbitrary and not justified by the evidence.

The award is set aside.

DONOFRIO, J., and WILLIAM W. NABOURS, Judge of the Superior Court, concur.

NOTE: Chief Judge HENRY S. STEVENS having requested that he be relieved from consideration of this matter, Judge WILLIAM W. NABOURS was called to sit in his stead and participate in the determination of this decision.