404 P.2d 715

**Rudolph ROBERTS, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent Insurance Carrier and Skomer's Incorporated, Respondent Employer.***

**No. 1 CA–IC 41.**

Court of Appeals of Arizona.

July 29, 1965.

Ira J. Bergman, Phoenix, for petitioner. Courtney L. Varner, Phoenix, for respondents.

CAMERON, Judge.

In December, 1962, petitioner was a male of some 57 years of age, and had regularly been employed as a salesman by respondent, Skomer's Incorporated, since June of 1954. He had no previous history of heart diseases and heart and blood pressure tests administered in the Veteran's Administration Hospital during the years 1954 and 1962 were essentially negative.

Petitioner's specialty was the selling of hats. And in order to properly sell the trade, petitioner had to go into the basement on many occasions where the hats were stored. The stairs were inclined at a sixty degree angle and were almost a ladder rather than a stairs.

The testimony indicates that December, 1962, was a busy season for the sale of hats and petitioner was required to and did, in the course of his employment, make many descents to the basement and back to the first floor to obtain the proper size and style of hat for the customers. The testimony indicates that for the week prior to Christmas, petitioner used these stairs to obtain hats and other merchandise over 100 times.

The Saturday before Christmas, 22 December, 1962, was described as an "un-

---

* The Petition was filed with the Arizona Supreme Court and assigned that Court's Number 8490. The Arizona Supreme Court issued its Writ of Certiorari. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

usual and an exceptionally busy day", and the testimony indicates that the petitioner used the stairs to the basement as much as six times an hour. He also testified that he was under emotional strain the week before Christmas, and the pressure for making sales had become extremely heavy and had placed an additional mental burden upon him.

About 11.00 a. m. on Saturday the 22nd, while petitioner was carrying hat boxes up the stairs from the basement, a pain occurred in his chest. The pain continued, tapered off and then became severe about six p. m., by which time the pain had extended into both arms. Sunday he stayed in bed, and Monday returned to work, but complained of the pain.

He was first examined by a Doctor Freund on 26 December, 1963, and was sent home for bed rest. An electrocardiogram a week later indicated that he had experienced an acute myocardial infarction and was admitted to the Veteran's Administration Hospital on or about 2 January, 1964. The matter was referred to an examining board consisting of Dr. Freund, Dr. Frissell and Dr. Hammer, and petitioner was examined 31 January, 1964. The report of the medical board stated:

> "There is no apparent causal relationship between the myocardial infarction and the patient's employment."

At the hearing held 22 April, 1964, the Doctors were cross-examined by the attorney for the petitioner and while Dr. Freund admitted that there was a possibility that the employment contributed to the myocardial infarction, he did not feel it was a probability. Dr. Ben P. Frissell testified:

> "I can't speak for the other two men involved but it would not be my opinion that the work involved was of such nature as to be a causal relationship."

■ This case can be distinguished upon the facts from the Thiel v. Industrial Commission, 1 Ariz.App. 445, 404 P.2d 711, decided this date. In the Thiel case, the deceased had been under extraordinary stresses and strains by virtue of his employment.

In the instant case, the testimony is in agreement that the petitioner was merely performing his usual work or sales activity. Though he was under more pressure and worked harder due to the season, still the "Christmas rush" is a normal and usual circumstance in the clothing business. With the possible exception of the season in question being heavier than normal, there is nothing to indicate that the conditions of employment were radically different from the conditions of employment existing during the eight Christmas seasons petitioner had worked for respondent prior to this. The issue before this Court is whether or not the findings and the award of the Commission can be sustained upon the record as being reasonably supported by the evidence. Russell v. Industrial Commission, 98 Ariz. 138, 402 P.2d 561 (1965).

In the instant case, the strongest testimony by Dr. Freund indicates only a possibility rather than a probability that petitioner's employment was a causal factor in petitioner's myocardial infarction.

> "Clearly, we cannot require the commission to find a fact on possibilities." Gronowski v. Industrial Commission of Arizona, 81 Ariz. 363 at 366, 367, 306 P.2d 285 at 287 (1957).

Based on the record before us, we can say that the findings and award of the Industrial Commission was reasonably supported by the evidence.

While this case can be decided on the basis of the testimony reasonably supporting the findings and award, it should be noted that most of the so-called "heart attack" cases turn on the question of whether or not the physical and mental stresses and strains associated with the employment was unusual and extraordinary in character or normal and usual. If the stresses and strains were extraordinarily unusual, as in the Thiel v. Industrial Commission case, 1 Ariz.App. 445, 404 P.2d 711, decided this day, there is usually testimony to indicate medical as well as legal causation between the employment and the myocardial infarction.

In the case where a myocardial infarction or heart attack occurs while a person is at work in the usual and ordinary course of his employment, the cases are pretty well divided on whether or not this should be classified an accident within the meaning of the Workmen's Compensation statute. Admitting that the statutes may vary from state to state, the principles involved seem to be the same. A recent New Mexico case has held that where the decedent in the ordinary course of his employment suffered a myocardial infarction, that the widow was entitled to death benefits, and the court in that case stated as follows:

"Counsel for the defendants argue vigorously that a heart attack which results from exertion expended by a workman in performing his usual and ordinary duties, under usual and ordinary circumstances of his work, may not be made the subject of a workmen's compensation award. It is their view that in a death under the circumstances here shown, the injury must result from some unusual, extraordinary or emergent situation to give it character as an accident. * * However, it seems now too well settled to be open to controversy * * * that as said in Gilbert v. E. B. Law & Son, Inc., supra 60 N.M. 101, 287 P.2d [992] 996:

'* * * It is not necessary that a workman be subjected to an unusual or extraordinary condition, not usual to his employment, for an injury sustained to be termed an accidental one under our law.' * * *"

Sanchez v. Board of County Commissioners, 63 N.M. 85, 313 P.2d 1055 at 1058 (1957).

This position has been criticized by William B. Putman, Esq., in the Arkansas Law Review, in an article titled "The Relationship of Effort or Stress to Coronary Heart Disease."

"In fact, this liberalization of the Workmen's Compensation Law, instead of accomplishing the desirable social result which was intended, has instead operated to the social and economic disadvantage of workers with a history of heart disease or whose age, blood pressure, weight or family history suggests that they are candidates for heart trouble. Employers, whose Workmen's Compensation rates depend on loss experience, are becoming increasingly reluctant to hire a man or keep one on the payroll whose physical examination suggests that, while performing his usual job, or perhaps while at home after work, he may expose them to a claim for industrial injury because a heart attack made inevitable by the condition of his arteries happened to occur while in their employ." 17 Ark.L.R. 39 at 40 (1963–1964).

Mr. Putman concluded by saying at page 43:

"* * * sound medical and legal principles require a showing of unusual strain or exertion before coronary occlusion and myocardial infarction can be considered compensable * * *."

The Washington case of Windust v. Department of Labor and Industries, 52 Wash.2d 33, 323 P.2d 241 (1958), in a split decision, held that where the deceased suffered a myocardial infarction for doing on the job what he had been doing for some ten years, that it was not an injury within the meaning of the Workmen's Compensation Act, and that there was no coverage. The court stated as follows, at page 244:

"We are constrained to hold that the routine act of ten years' standing is not an injury as a matter of law."

In a specially concurring opinion, Judge Donworth quoted an earlier decision with approval, as follows:

"'The mere fact that the man happened to be engaged in performing the functions of his employment at the moment his progressive disease reached its climax, at which point any ex-

**452**

ertion, any movement, any effort would cause the diseased heart to cease its function, should not be considered as creating a situation in which compensation becomes proper. In such a case industry is not the *cause* of the injury, but simply provides the setting for it. To impose upon industry the risk created by progressive diseases, such as heart trouble, apoplexy, embolism, and the like, reaching their climaxes at a time *while the workmen are engaged in performing their everyday functions* is to greatly outdistance the legislature's intention, and throws a far greater burden on industry than the act itself was intended to impose * * *.'" 323 P.2d 241, 247.

The conditions may be distinguished from the cases of pulmonary emphysema where successive inhalation of dust or fumes on the job directly cause the disease in question. Mead v. American Smelting and Refining Company, 1 Ariz.App. 73, 399 P.2d 694 (1965), Reilly v. Industrial Commission, 1 Ariz.App. 12, 398 P.2d 920 (1965).

We hold that where the facts indicate, as here, that the petitioner, while performing his usual and ordinary duties of work, suffers a myocardial infarction as a result of arteriosclerosis and where, further, the testimony is sufficient to indicate that the man's employment did not contribute to or cause the myocardial infarction or heart attack, that the Industrial Commission's findings denying compensation are reasonably supported by the evidence.

The award is affirmed.

DONOFRIO, J., and WILLIAM W. NABOURS, Judge of the Superior Court, concur.

NOTE: Chief Judge HENRY S. STEVENS having requested that he be relieved from consideration of this matter, Judge WILLIAM W. NABOURS was called to sit in his stead and participate in the determination of this decision.