435 P.2d 52

Carl Gordon **KINSMAN**, Petitioner,

v.

The **INDUSTRIAL COMMISSION** of Arizona, and Western Greyhound Lines, Division of the Greyhound Lines, Incorporated, Respondents.

No. I CA–IC 158.

Court of Appeals of Arizona.

Jan. 17, 1968.

As Amended Jan. 25, 1968.

**610**

Hirsch, Van Slyke & Ollason, by
Lawrence Ollason, Tucson, for petitioner.

Robert K. Park, Chief Counsel, by Noel
J. R. Levy, Phoenix, for respondents.

CAMERON, Chief Judge.

This is a writ of certiorari to review the
lawfulness of an award for noncompensable
claim and denial of the petition for rehear-
ing by the Industrial Commission of Ari-
zona. The petitioner alleged a physical dis-
ability resulting from a coronary.

The facts necessary for a determination
of this matter on appeal are as follows.
Petitioner's first episode of severe chest
pain occurred while driving a bus for re-
spondent company in 1957. In 1962 he was
hospitalized at the Southern Pacific Hospi-
tal in San Francisco for "excision of a vocal
cord polyp", and the record available from
that hospitalization reveals an abnormal
electrocardiogram compatible with arterio-
sclerotic heart disease. In 1965 he was
examined for chest pains by a physician in
Flagstaff, Arizona, and on 1 February 1966
he was hospitalized as a result of abdominal
pains and vomiting. His condition was
diagnosed as a gastric ulcer, arteriosclerotic
cardiovascular disease, and hypertension.
This episode had a symptom of angina and
the doctor felt that he should no longer drive
a bus. Upon being released from the hospi-
tal he was taken off bus driving and has
not resumed his prior occupation. Peti-
tioner was 48 years old at this time.

A letter submitted to the Industrial Com-
mission from the attending physician in
Flagstaff, dated 14 February 1967, con-
tained the following statement:

"I have given you a brief resume of
Mr. Kinsman's history and physical find-
ings in the hope that it will help you.
At the time I submitted the original Form
C-402, I did not consider this to be an on
the job illness, but a more detailed review
of his history reveals that he related chest
pain only while on the job. The Angina
did increase after February, 1966. This
disease was first diagnosed, to the best
of my knowledge, at the Southern Pacific
Hospital in 1962. * * *"

A hearing was held upon the peti-
tioner's application at which time the doctor
testified in part as follows:

"Q Prior to the February date, this was
a diseased heart, isn't that correct?

"A Yes.

"Q And this diseased heart was aggravated by the type of employment that he was in?

"A This could very possibly be true. Again I know of no way to definitely prove or disprove the degree of strain, whether it be physical or emotional, which may have a harmful effect on a cardiac condition such as this.

"Q As a result of all of your studies and Mr. Kinsman's records, you have come to the conclusion that after the hospitalization in February this was a man that should not go back to the same employment he was doing prior to his admission?

"A Yes. I felt that he should not return really to much of any type of employment unless it would be something very, very sedentary, which really involved practically no physical or, for that matter, mental exertion. What that type of job would be I don't know.

 * * * * * *

"Q And had the occupation of bus driving aggravated his heart condition previous to his admission to the hospital?

"A That is the question that I don't think I can really answer. I know of no way to prove or disprove whether an occupation like this would materially affect this condition one way or the other."

It is the contention of the petitioner that the evidence indicates a causal connection beween the petitioner's employment and the heart condition, and we have stated:

"In order to establish a compensable claim petitioner must sustain the burden of proving a recognizable causal connection between the employment and the accidental injury, or more specifically in a case such as this, he must sustain the burden of proving that the exertion of his job precipitated the heart attack. See Jones v. Industrial Commission, 81 Ariz. 352, 306 P.2d 277. This fact must be the only possible inference drawable from the evidence in order for us to set aside the award denying compensation. Hudgens v. Industrial Commission, 83 Ariz. 383 at 384, 321 P.2d 1039 at 1040 (1958)." Thiel v. Industrial Commission, 1 Ariz. App. 445, 447, 404 P.2d 711, 713 (1965).

And this Court in discussing what is necessary to show a recognizable causal connection in heart attacks generally has stated:

"We hold that where the facts indicate, as here, that the petitioner, while performing his usual and ordinary duties of work, suffers a myocardial infarction as a result of arteriosclerosis and where, further, the testimony is sufficient to indicate that the man's employment did not contribute to or cause the myocardial infarction or heart attack, that the Industrial Commission's findings denying compensation are reasonably supported by the evidence." Roberts v. Industrial Commission, 1 Ariz.App. 449, 452, 404 P.2d 715, 718 (1965). See also Rabago v. Industrial Commission, 5 Ariz.App. 563, 429 P.2d 14 (1967).

In order to establish a compensable claim petitioner must sustain the burden of proving a recognizable causal connection between the employment and the accidental injury. Viewing the strongest testimony in support of petitioner's position as we have set forth from the letter and statement of the attending physician, we do not find job-related, unusual or extraordinary physical or emotional stresses and strains usually present in those cases wherein the courts have found legal as well as medical causation between the employment and the heart condition. The fact that the petitioner's employment merely provided the setting for the advent and maturation of the diseased heart and the subsequent coronary, is not sufficient to require a finding by the Commission of a causal connection between the person's employment and the coronary and resulting disability.

We have reviewed the file in this case, and we believe that the conflict in the evidence is sufficient from which the Industrial Commission could find that there is

no causal relationship between the employment and petitioner's disability.

Petitioner also complains of the activities of the Claims Department of the Industrial Commission in soliciting information and interviewing the petitioner after he had obtained the services of an attorney. The file reflects a letter to the Industrial Commission of Arizona received 12 September 1966 notifying the Commission of the name and address of petitioner's attorneys and authorizing inspection of the petitioner's file by said attorneys. The file reflects thereafter a memo dated 13 September 1966 from the Acceptance Desk of the Industrial Commission to the Chief Investigator of the Commission stating:

"Please obtain releases from claimant and obtain all previous medical records you can re heart condition. * * *"

A note from the Acceptance Desk to the Legal Department dated 24 October 1966 also requests:

"The claimant became ill at home. The claimant has a history of frequent and severe chest pains. The doctor does not feel this is industrial. Please advise if it's necessary to obtain a heart questionnaire before a decision can be made."

And a Response Memorandum to Acceptance from an attorney in the Legal Department:

"Yes. Also obtained signed detailed factual statement of actual lifting done day before and customary lifting prior thereto and the effect upon his chest thereby."

Though signed by an attorney in the Legal Department the file does not reflect that the attorney, at the time of the memo, had the file before him which would have contained petitioner's notification of employment of counsel. The attorney referred to herein is not an attorney of record in the matter now before us.

■■ Thereafter the petitioner was contacted, questionnaires were obtained from him including releases and authorization to inspect and obtain any and all medical history and copies of hospital or medical records. Petitioner does not object to the contents of the two questionnaires obtained by the investigator from the petitioner, one titled *Affidavit of Witness* and the other titled *Heart Questionnaire,* and we can find nothing in these two documents which the Commission could not lawfully and ethically have obtained under proper circumstances. We cannot, however, approve of this practice by the Commission. The Industrial Commission and the Legal Department thereof are bound by the same rules of ethics concerning the practice of the law as is a private practitioner, and had petitioner objected we would have had no hesitancy in excluding these documents from consideration. There being no objection, however, we may consider them though we expressly disapprove of the Commission's actions in this regard.

Award affirmed.

DONOFRIO and STEVENS, JJ., concur.