444 P.2d 739

**Peggy C. ROSE, widow of Donald LeRoy Rose, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, and Frank G. Murphy, John L. Ahearn and C. Lawrence Huerta, Members of the Industrial Commission of Arizona, and Springer Transfer Company, Respondents.**

**No. I CA–IC 163.**

Court of Appeals of Arizona.

Sept. 10, 1968.

Rehearing Denied Oct. 9, 1968.

Review Denied Nov. 19, 1968.

---

Rees, Estes & Browning, by William D. Browning, Tucson, for petitioner.

Robert K. Park, Former Chief Counsel, Robert D. Steckner, Chief Counsel, by Spencer K. Johnston, Tucson, for respondents.

CAMERON, Chief Judge.

This case is before the Court on a writ of certiorari brought by petitioner, Peggy C. Rose, widow of Donald LeRoy Rose, deceased employee, to test the lawfulness of an award and findings of the Industrial Commission of Arizona issued 27 July 1967 which found that the death of Donald LeRoy Rose was not causally related to his industrial injury and denied widow's and dependents' claims for death benefits.

We are called upon to determine whether the award is reasonably supported by the evidence. Frizzell v. Industrial Commission, 6 Ariz.App. 293, 432 P.2d 152 (1967).

The deceased suffered an industrial injury on 4 August 1964 while in the process of unhooking and unloading hose from the truck he was driving. The hose struck him on the forehead, which in turn caused him to strike the back of his head against the truck. The injury occurred at Flagstaff, Arizona. The decedent drove the truck back to Gallup, New Mexico, the day of the injury and after reporting in took the truck some distance to reload it for the next day's trip and returned it to the company yard. The deceased had reported the accident to his employer, and later that evening telephoned the employer and complained that he was suffering from a severe headache. The employer advised him to go to the hospital which he did. He telephoned the employer later that evening from the hospital to tell him that he was being admitted for observation. The decedent was in the hospital from the evening of 4 August to the morning of 6 August 1964. He was discharged on the morning of 6 August with instructions to report to the doctor's office for a checkup at a later date. He was readmitted at approximately 11:00 p.m. on 6 August complaining of a severe headache and was observed to be in a state of mental depression. He was discharged again the following morning 7 August. He committed suicide by drinking rat poison on 8 August 1964.

The petitioner urges that the decedent's suicide bears a causal relationship to the industrial injury of 4 August 1964. Our Supreme Court has stated that a suicide may be directly related and causally connected to an industrial injury and not be excluded from the Workmen's Compensation Act. Graver Tank & Manufacturing Co. v. Industrial Commission, 97 Ariz. 256, 399 P.2d 664 (1965). However, in order to establish a compensable claim, workmen's compensation claimant must sustain the burden of proving a recognizable causal connection between the employment, the industrial injury, and the death. Thiel v. Industrial Commission, 1 Ariz.App. 445, 404 P.2d 711 (1965).

We have reviewed the file in this matter and believe the award of the Commission is reasonably supported by the evidence. The testimony of the medical witnesses is indicative. Dr. Charles Keney,

the attending physician, testified as follows:

"Q Doctor, you haven't changed your opinion as I recall, and in your opinion you cannot state with any degree of medical certainty that the injury caused or contributed to the man's committing suicide, is that your testimony?

"A Yes, sir, it is.

"Q Conversely, you cannot state with any degree of medical certainty that the injury did not contribute to his committing suicide?

"A No, sir."

Dr. William B. McGrath of Phoenix testified:

"Q (The Referee) Doctor, just one question. Somewhere back in the morass of testimony, I believe that you stated that you felt that the industrial accident and the injury that he had had some connection, some interrelationship with this man's committing suicide. Now correct me if I got the wrong impression of that statement?

"A I think that is incorrect. I did not see an interrelationship. The only connection I saw between the incident and the injury on the one hand and the suicide on the other I used the term 'incidental'.

"Q When you say 'incidental' what does that mean?

"A Many things happened to this man over the period of his lifetime and many things happened to him in the immediate time before his suicide, many of which, in my opinion, had no direct or etiological bearing on the suicide, and I include the accident and the injury among the miscellaneous items or conditions or incidental happenings.

"Q Does it have any relationship with his suicide in your opinion?

"A In my opinion, no."

And Robert L. Cutts, M.D., at the Tucson hearing testified:

"Q Then you feel, Doctor, am I correct, do you feel that the industrial injury and its consequences played a part in the behavior pattern he exhibited following that injury, which, of course, eventually led to his taking his own life?

\* \* \* \* \*

"Q To a reasonable medical probability, Doctor, would you answer that question?

"A I would say yes, I would still say yes."

Although Dr. Cutts' testimony appears favorable we believe that the testimony of Dr. Keney and Dr. McGrath as well as other evidence in the file is sufficient to reasonably support the decision of the Commission. Frizzell v. Industrial Commission, supra.

The award is affirmed.

DONOFRIO, and STEVENS, JJ., concur.