451 P.2d 894

Robert B. RUTLEDGE, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Cyr & Evans Contracting Company, Respondents.

No. 1 CA–IC 199.

Court of Appeals of Arizona.

March 12, 1969.

R. Kelly Hocker, Tempe, for petitioner.

Robert D. Steckner, Chief Counsel, by Michael A. Lasher, Jr., and Donald L. Cross, Phoenix, for respondents.

CAMERON, Judge.

This is a writ of certiorari to review an award of the Industrial Commission of Arizona which found that the petitioner did not sustain an injury arising out of and in the course of his employment.

We are called upon to determine:

1. The date of the alleged accident.
2. Whether the disability of the petitioner is the result of an injury or accident arising out of and in the course and scope of his employment.

## DATE OF THE INJURY

Petitioner has a history of heart difficulty and first suffered an "attack" in 1957. On 14 October 1966 the petitioner saw Dr. George Bascom for a check-up. Petitioner was advised that he should be immediately hospitalized, however, petitioner refused to follow this advice and returned to the job. On 31 October 1966, while running a bulldozer pushing gravel up to a rock crusher, petitioner felt ill and was forced to stop work for about 30 minutes. After finishing his shift he was admitted to the hospital for two weeks. The medical report of the physician filed 19 January 1967 indicates the date of the first treatment as 14 October 1966 and the date of admission 31 October 1966. The petitioner's report of injury gives the date of injury 31 October 1966, the employer's report of injury gives the date of 31 October 1966, and later on in the proceedings the petitioner filed a letter authorizing an inspection of the records by his attorneys of anything "pertaining to the injury which I sustained on October 31, 1966 while working for Cyr and Evans Construction (sic) Company."

The Commission has elected to refer to 14 October as the date of the injury and in the first findings and award for non-compensable claim the findings of the Commission are "that the above named applicant claims to have sustained a personal injury by accident arising out of and in the course of his employment on October 14, 1966." This was protested and petition for rehearing was filed and after the hearing the Commission again found "that the applicant did not sustain an injury arising out of and in the course of his employment on October 14, 1966." It is from this finding and order that petitioner brings this writ of certiorari. We agree with the attorney for the Commission in his statement:

"It is clear that October 31, 1966 is the 'date of accident' relied upon by applicant."

And although we cannot say that the findings of the Commission that the applicant did not sustain an injury on 14 October 1966 is incorrect, we do find it is immaterial to the accident and does not support the finding by the Commission that the petitioner did not sustain an accident arising out of and in the course of his employment.

## WAS THIS AN ACCIDENT ARISING OUT OF HIS EMPLOYMENT?

██ Petitioner, with a history of heart attacks and with a disregard for the advice of the doctor in the case, returned to work after the physical examination of 14 October 1966. Petitioner had worked for Evans and Spraws, a predecessor company, in 1943. He worked for Evans Contracting Company from 1950 until 1955, and had worked for Cyr and Evans from 1959 until disabled in 1966. It is clear from the testimony that he suffered an accident of some sort on 31 October 1966. The Commission denied compensation and a hearing was requested. At the hearings held on 11 December 1967, petitioner and his fellow-workmen testified as to the attack itself and his illness on the job. At the hearing held 14 December 1967 George W. Bascom, M. D., a specialist in the field of cardiology, testified as to petitioner's condition. Dr. Bascom was the only medical witness. His testimony was in part as follows:

Q Do you have an opinion based upon a reasonable degree of medical certainty as to whether or not the work as heavy equipment operator which Mr. Rutledge was performing prior to the time you saw him had aggravated his pre-existing arteriosclerotic heart disease?

"A On the basis of his medical history this man has severe coronary artery disease which is severely aggravated by his occupation. Now, his first attack was in 1956, I believe, is that correct?

"THE REFEREE: 1957.

"THE WITNESS: This was due to, without question, the residuals that we find in the electrocardiogram and other observations to coronary artery disease. He continued to work and aggravated this disease until it has as I would dare say less than 50% of the normal coronary artery bed. The type of work that this man does, because of the physical stress, and he ·is a personality who is very precise in keeping his equipment in good operating condition, he worries about it, has certainly aggravated this disease tremendously."

Although petitioner's job as a heavy equipment operator placed a great deal of physical as well as mental stress upon him, we do not find that there was associated with the accident of 31 October 1966 any unusual or extraordinary physical or emotional stress connected with his employment. He was doing what he usually did which was itself strenuous employment. The attorney for the Commission cites from a case of this Court in which we stated:

"Viewing the strongest testimony in support of petitioner's position as we have set forth from the letter and statement of the attending physician, we do not find job-related, unusual or extraordinary physical or emotional stresses and strains usually present in those cases wherein the courts have found legal as well as medical causation between the employment and the heart condition. The fact that the petitioner's employment merely provided the setting for the advent and maturation of the diseased heart and the subsequent coronary, is not sufficient to require a finding by the Commission of a causal connection between the person's employment and the coronary and resulting disability." Kinsman v. Industrial Commission, 6 Ariz. App. 609, 611, 435 P.2d 52, 54 (1968).

And this Court has earlier stated:

"While this case can be decided on the basis of the testimony reasonably supporting the findings and award, it should be noted that most of the so-called 'heart attack' cases turn on the question of whether or not the physical and mental stresses and strains associated with the employment was unusual and extraordinary in character or normal and usual. If the stresses and strains were extraordinarily unusual, as in the Thiel v. Industrial Commission case, 1 Ariz.App. 445, 404 P.2d 711, decided this day, there is usually testimony to indicate medical as well as legal causation between the employment and the myocardial infarction." Roberts v. Industrial Commission, 1 Ariz.App. 449, 450, 404 P.2d 715, 716 (1965).

It is apparent from the appellee's statements in the brief as well as the statements of other counsel in oral argument before this Court that a certain amount of confusion has been created by these cases. Part of this confusion is caused, we believe, by the fact that causation in heart attack cases is almost entirely within the province of medical testimony and cause and effect is not apparent to the lay observer as for example in the case of a broken arm or severed toe. The fact situation in Thiel v. Industrial Commission, 1 Ariz.App. 445, 404 P.2d 711 (1965), wherein the worker died of a heart attack at home on a week-end, could well lead a lay observer to believe that there was no causal relationship between the heart attack and the employment, while the same lay observer might well decide that the activity of the petitioner in Roberts v. Industrial Commission, supra, that of climbing up and down a flight of stairs many times a day during the Christmas rush, would indicate a causal relationship between the petitioner's myocardial infarction and the conditions of his employment. However, most if not all of these cases turn ultimately upon the medical testimony. The medical testimony in Roberts v. Industrial Commission, supra, for example, indicated that the job or employment conditions merely provided a setting for the heart attack whereas in Thiel v. Industrial Commis-

sion, supra, the medical testimony indicated a causal relationship between the heart attack and the conditions of employment. In Thiel v. Industrial Commission, supra, the testimony of the medical witness was as follows:

" 'Question: And that in some manner you feel this overwork and stress and strain did contribute to his untimely death even in some minute amount on April 1?

" 'Answer: I would have to say yes.' "

1 Ariz.App. at 448, 404 P.2d at 714. While in Roberts v. Industrial Commission, supra, the report of the medical board was as follows:

" 'There is no apparent causal relationship between the myocardial infarction and the patient's employment.' " 1 Ariz. App. at 450, 404 P.2d at 716.

It is obvious that no hard and fast rule can be laid down that governs all situations, Jones v. Industrial Commission, 81 Ariz. 352, 306 P.2d 277 (1957), and the fact that in most compensable "heart attack cases" there is usually testimony concerning "job-related unusual or extraordinary physical or emotional stresses and strain" does not mean that absent these factors there is a lack of legal as well as medical causation between the employment and the heart condition. The question is still one of causation and where as here the cause of injury is peculiarly within the province of expert medical testimony, that testimony is conclusive upon the Commission and the Commission may not substitute its judgment for those of the medical expert. Sandoval v. Industrial Commission, 3 Ariz. App. 449, 415 P.2d 463 (1966). In the instant case, the uncontroverted medical testimony clearly indicating a relationship between petitioner's employment and his injury, the award of the Commission is not reasonably supported by the evidence and must be set aside.

Award set aside.

DONOFRIO, C. J., and STEVENS, J., concur.