SUSAN S. CHRISMAN, SURVIVING SPOUSE OF
GERALD D. CHRISMAN, DECEASED, APPELLANT, V.
GREYHOUND BUS LINES, INC., A CORPORATION,
APPELLEE.

301 N.W.2d 595

Filed February 6, 1981. No. 43072.

James R. Welsh and Robert V. Roach for appellant.

Theodore J. Stouffer and Ronald F. Krause of Cassem, Tierney, Adams, Gotch & Douglas for appellee.

Heard before KRIVOSHA, C.J., McCOWN, and HASTINGS, JJ., and COLWELL and CANIGLIA, District Judges.

CANIGLIA, District Judge.

This is an action brought by the plaintiff, Susan S. Chrisman, as surviving spouse of Gerald D. Chrisman, deceased, and as the mother and natural guardian of Duane L. Chrisman, Deborah Sue Chrisman, Dale Scott Chrisman, and Dorie Ann Chrisman, minor children of Gerald D. Chrisman, deceased, seeking benefits under the Nebraska Workmen's Compensation Act from the defendant, Greyhound Bus Lines, Inc., a corporation, on account of the death of Gerald D. Chrisman, an employee of Greyhound Bus Lines, Inc.

For convenience hereafter, Susan S. Chrisman will be referred to as the plaintiff, Gerald D. Chrisman as the decedent, and Greyhound Bus Lines, Inc., as the defendant.

The plaintiff alleges that Chrisman died on April 23, 1978, as the result of an accident arising out of and in the course of his employment. The defendant, in its answer, admits that decedent was an employee, and that the cause of death was attributed to severe coronary atherosclerosis. However, the defendant denies that the cause of death arose out of decedent's

employment or from any exertion of his occupation greater than the normal exertion of his nonemployment life.

The compensation court, in a single-judge hearing, dismissed the plaintiff's petition. Pursuant to Neb. Rev. Stat. § 48-179 (Reissue 1978), the plaintiff applied for and was granted a hearing before a three-judge panel. The three-judge panel dismissed the plaintiff's petition, affirmed the findings of the single compensation judge, and affirmed his order of dismissal.

The plaintiff has appealed that ruling to this court, assigning as error that the three-judge panel of the compensation court erred in finding (1) that the evidence failed to demonstrate that the exertion of decedent's employment was greater than his nonemployment life; and (2) that the evidence failed to demonstrate that decedent's employment exertion contributed in some material and substantial degree to his fatal attack.

The issue then, presented by this appeal, is whether the evidence shows that the exertion of decedent's employment was greater than that of his nonemployment life and whether the decedent's employment exertion contributed in some material and substantial degree to his fatal attack. This determination requires a review of the evidence presented to the single judge and subsequently to the three-judge panel.

The evidence discloses the following: On April 23, 1978, the plaintiff's decedent, Gerald D. Chrisman, died of a heart attack (cardiac arrhythmia) at the Greyhound Bus Lines terminal in Omaha, Nebraska. At some time immediately prior to the attack, decedent had been in the process of unloading baggage from the baggage compartment of one of the buses in connection with his employment by the defendant. Due to the fact that the baggage compartment on a Greyhound bus is located below the space occupied by passengers, it is necessary for the employees unloading the bus to bend over at the waist or to otherwise crouch down in order to gain access to the packages contained

within the compartment. The compartments are located on both sides of the bus; usual unloading procedures dictate that two employees simultaneously work compartments on opposite sides of the bus until all luggage has been removed.

A company employee was working the baggage compartments with the decedent on the morning of his death. At some point immediately prior to the attack, the company employee had assisted the decedent in his efforts to shift a triangular-shaped package which was estimated to weigh approximately 30 to 40 pounds. While the two employees were turning the package from opposite sides of the bus, the company employee overheard the decedent utter an expletive, but did not attach significance to the expletive at the time.

Following the incident with the triangular-shaped package, the company employee proceeded to unload the two adjacent baggage compartments. Consequently, it is not known how much time elapsed between the decedent's efforts in connection with his attempt to turn the package and the onslaught of the attack; estimates range from between 3 to 5 minutes. When the company employee finally came around the bus from the rear, he found the decedent clear of the compartment and lying on the ground. Decedent was eventually transported to Lutheran Medical Center in Omaha, where he was pronounced dead.

At the time of his death, the decedent was 37 years old, 71 inches tall, and weighed approximately 220 pounds. The decedent had experienced a nagging weight problem and had been placed on various diets since 1964. He had been taking medication to control the development of hypertension since March of 1964. He had shown reluctance in following the program of medication prescribed for him and frequently complained that the drugs gave him headaches; his personal physician suspected that he rarely took the medication. In 1977, the decedent was diagnosed a diabetic, and he had been taking diabenese, one daily, since that time.

The autopsy report revealed that the decedent had contracted atherosclerosis affecting all three of the major vessels to the heart. One of the arteries had undergone a 90 percent narrowing. The report also disclosed scattered areas of scar tissue within the heart of the decedent, suggesting the existence of past coronary problems.

The decedent's nonemployment life was characterized by the plaintiff as being "physically active." In addition to his employment with defendant, he also "moonlighted" as a schoolbus driver. During the winter months he operated his own snow removal service. Although he apparently utilized a snowplow in removing large drifts in connection with his snow removal business, the decedent did assist his sons in shoveling the family's own driveway by hand. For recreation, the decedent participated in camping and enjoyed amateur mechanics as a hobby.

Based upon this evidence, the Workmen's Compensation Court made the following findings: The decedent led a moderately active nonoccupational life. He engaged in camping, playing with his children, lawn work, and snow shoveling. He worked part time as a busdriver for the city school bus system, and in the winter used his truck to plow snow in the snow removal business. His health record shows that he had a long history of high blood pressure and the autopsy demonstrates that he brought to the job the personal risk of severe coronary atherosclerosis. On the day of the fatal attack, the decedent had been on the job approximately 2 hours and had participated in loading and unloading five buses when his death occurred. The decedent had been resting approximately 5 minutes before commencing the unloading of the bus which was the one being unloaded when the decedent collapsed. The decedent had been unloading the bus for, at most, a few minutes before he collapsed, and it could be concluded that the decedent removed no more than two parcels or bags from the bus when the fatal

attack occurred. The compensation court concluded that the evidence failed to demonstrate that the employment exertion was greater than the decedent's nonemployment exertion and that said exertion contributed in some material and substantial degree to the fatal attack.

In making these findings the Workmen's Compensation Court considered the medical testimony of several experts. Summarizing the medical testimony adduced at the trial, both of the plaintiff's experts initially opined that the exertion entailed by the employment of the decedent had precipitated the fatal attack. Ultimately, however, under cross-examination, both of these experts backed away from this position, one concluding that it was not possible to say with reasonable medical certainty that decedent's exertion was greater than the physical exertion in his nonwork life; the other expert conceding that the factors precipitating the attack lay within the realm of conjecture and speculation. Only the defendant's expert maintained the same position throughout the entire proceeding; that is, the employment activity added nothing significant to the dangers inherent in the decedent's preexisting condition, and that decedent's coronary disease could have caused the fatal attack at any time during employment or nonemployment activity.

In this connection, it should be noted that the plaintiff's burden of establishing the causative link between the employment of the decedent and the fatal attack is enhanced where, as in this case, the evidence established the existence of a preexisting condition.

This court expressly recognizes the causation problems inherent in fact situations involving preexisting conditions. Neb. Rev. Stat. § 48-151(4) (Reissue 1978) provides: "The terms injury and personal injuries shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom. The terms shall include disablement resulting from occupational disease arising out of and

in the course of the employment in which the employee was engaged and which was contracted in said employment. The terms shall include an aggravation of a preexisting occupational disease, the employer being liable only for the degree of aggravation of the preexisting occupational disease. The terms shall not be construed to include disability or death due to natural causes but occurring while the employee is at work, nor to mean an injury, disability or death that is the result of a natural progression of any preexisting condition."

The claimant must establish by a preponderance of the evidence that an unexpected or unforeseen injury was in fact caused by the employment. "The terms 'injury' and 'personal injuries' do not include disability or death due to natural causes but occurring while the employee is at work, nor an injury, disability, or death that is the result of a natural progression of any preexisting condition." *Newbanks v. Foursome Package & Bar, Inc.*, 201 Neb. 818, 822, 272 N.W.2d 372, 375 (1978). The employment must contribute substantially to cause the injury. "'If there is some personal causal contribution *in the form of a previously weakened or diseased heart*, a heart attack would be compensable only if the employment contribution takes the form of an exertion greater than that of non-employment life. Note that the comparison is not with *this employee's* usual exertion *in his employment*, but rather with the exertions present in the normal *non-employment* life of this or any other person.' [Citation omitted.]" *Beck v. State*, 184 Neb. 477, 480, 168 N.W.2d 532, 533 (1969).

In an appeal to this court, the findings of fact made by the Workmen's Compensation Court shall have the same force and effect as a jury verdict in a civil case. "A judgment, order, or award of the Nebraska Workmen's Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the court acted without or in excess of its powers, (2) the judg-

ment, order, or award was procured by fraud, (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or (4) the findings of fact by the court do not support the order or award." See, *Scamperino v. Federal Envelope Co.*, 205 Neb. 508, 514, 288 N.W.2d 477, 481 (1980); *Johnson v. Village of Winnebago*, 197 Neb. 845, 251 N.W.2d 176 (1977).

In determining the sufficiency of evidence necessary to sustain an award of the Nebraska Workmen's Compensation Court after rehearing, such evidence must be considered most favorably to the successful party; every controverted fact must be resolved in his or her favor; and he or she must receive the benefit of every inference reasonably deducible from it. See, *McCann v. Holy Sepulchre Cemetery Assn.*, 205 Neb. 444, 288 N.W.2d 45 (1980); *Riley v. City of Lincoln*, 204 Neb. 386, 282 N.W.2d 586 (1979).

Applying these guidelines, we hold that the evidence in the record before us sustains the findings of the Workmen's Compensation Court. The order of the Workmen's Compensation Court is therefore affirmed.

AFFIRMED.