ELLA BRANDT, APPELLANT, V. LEON PLASTICS, INC., APPELLEE.
483 N.W.2d 523

Filed April 17, 1992.   No. S-91-399.

Jerry J. Milner, of Milner Law Office, P.C., for appellant.

D. Steven Leininger, of Luebs, Beltzer, Leininger, Smith & Busick, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

The plaintiff-appellant employee, Ella Brandt, challenges the dismissal of her claim for benefits from the defendant-appellee employer, Leon Plastics, Inc., claiming the compensation court erred by (1) concluding the medical evidence was in conflict, (2) applying an improper standard of proof, and (3) concluding that she failed to sustain her burden of proof. We affirm.

Brandt is now 52 years old, has an eighth-grade education, and moved to the United States from Germany in 1958 at the age of 18. She began working for Leon Plastics in October 1979 and held but one other job in this country, when she worked as a waitress for a year. She denies suffering any injury or disabilities before she began to work for Leon Plastics.

After working as a sander at Leon Plastics for 2 years, she became an inspector on an assembly line. As such, her duties included removing parts from the line, touching them up with paint, and then passing them to the next person.

In approximately 1986, the parts Brandt worked with began to include "deck panels." Brandt described these 14-pound panels, measuring 5 feet by 3 feet, as being similar to a big tabletop with brackets on the back. Brandt lifted them over her head, set them on a table, and then inspected them. She would then place them on a 1-foot-high stool and bend over to touch up the sides. Finally, she would place them back on the table to paint the bottom before passing them on to the next person.

There is evidence that Brandt worked on these panels 3 weeks of every month in 1989. Leon Plastics set a quota of 300 panels in an 8-hour day, and Brandt worked up to 56 hours a week during the fall and winter of 1989. One worker testified that the line employees worked more overtime during that period than at any other time in the worker's 18 years with the company. The record reveals that several workers developed back pain after working with the panels and that management considered reassigning some of the workers because the activity was so hard on them.

Brandt began experiencing lower back pain within 6 months to a year prior to her last day of work on December 22, 1989. She testified that during November and December 1989 the

pain increased and began radiating into her hip and right leg. Her coworkers noticed that during this time Brandt was in pain—she walked with a limp and complained about pain and numbness in her leg. She also became uncharacteristically willing to allow others to perform the more difficult tasks.

Leon Plastics closed its plant for the Christmas holiday. On December 29, 1989, while doing some housework, Brandt decided to see a physician, as she could no longer tolerate her back pain.

Prior to this time Brandt did not report any problems to her supervisors and had continued to participate in a weekly bowling league which began in August 1989. While bowling, she used a 12-pound ball and did a lot of stooping and bending. Brandt testified that her housework on December 29 included mopping, vacuuming, and hanging out the bedding. She also gardened a small plot in her yard and mowed the lawn on occasion during the summer and fall of 1989.

Brandt also testified that she did not slip or fall or suffer any type of trauma while bowling or doing the housework on the 29th, but that her tolerance just gave out.

The physician who examined Brandt on December 29 recommended she stop working and scheduled a CAT scan for January 4, 1990. On January 2, Brandt reported for work but a foreman, who knew of her medical problems, told her to go home.

On January 4, Brandt provided her personnel manager a physician's note excusing her from work, at which time she requested some insurance forms. Brandt filled out two applications for group health plan benefits, indicating on each that her injury was not work-related. She explained that she did not check the workers' compensation box at the instruction of the personnel manager, who told her such benefits were unavailable as she had not immediately reported an accident. However, the personnel manager denied this assertion, stating that the subject of workers' compensation did not come up at all during the January 4 conversation.

On January 11, Brandt was examined by a physical therapist. The therapist indicated on a form he used that workers' compensation was not involved. Nonetheless, the

therapist testified that Brandt told him she experienced back pain while working. The therapist also stated that Brandt seemed confused as to the correct procedures for asserting a workers' compensation claim.

Brandt first raised the possibility of receiving workers' compensation benefits with her personnel manager sometime in mid-February 1990. At that time the personnel manager told her she could not claim such benefits because she failed to report the accident on January 2, when it first happened.

After physical therapy proved unsuccessful, Brandt came under the care of Drs. John A. Albers and Gordon D. Bainbridge. Bainbridge concluded that Brandt was suffering from a herniated disk and performed a laminectomy on April 2, 1990.

In letters dated August 13 and December 13, 1990, and January 10, 1991, Bainbridge wrote that, in his opinion, Brandt's injury was, to a reasonable degree of medical certainty, caused by the repetitive and cumulative trauma she sustained during her employment at Leon Plastics.

However, in a letter dated September 21, 1990, Bainbridge attributed Brandt's disability to a work-related injury occurring on December 12, 1989. Later, in a letter dated October 31, 1990, Bainbridge declared that his earlier reference to a December 12 injury was inadvertent and that date was intended only to approximate the onset of the radiating pain into her leg. The record contains no other medical evidence on the issue of causation.

The first assignment of error is resolved adversely to Brandt by the rule that where the testimony of the same expert is conflicting, resolution of the conflict rests with the trier of fact. See *Doggett v. Brunswick Corp.*, 217 Neb. 166, 347 N.W.2d 877 (1984). Thus, it was for the compensation court to determine whether to believe Bainbridge's explanation for writing that the injury occurred on two different dates. Moreover, the compensation court is not required to take an expert's opinion as binding and may, as may any other trier of fact, either accept or reject such an opinion. See, *Liberty v. Colonial Acres Nsg. Home, ante* p. 189, 481 N.W.2d 189 (1992); *Bernhardt v. County of Scotts Bluff, ante* p. 423, 482 N.W.2d 262 (1992).

Brandt's second assignment of error, which claims the compensation court employed an improper standard of proof, stems from the recitation in the compensation court's order that in cases involving a series of repeated traumas, the claimant must show that the employment exertion "contributed in some material and substantial degree to cause the injury." The order also recites, "The medical evidence is in conflict and does not establish preponderantly that plaintiff's problems are the result of a work injury in December of 1989 or of repetitive trauma." It is clear, therefore, that because of Bainbridge's contradictory history concerning when the injury manifested itself, the compensation court found his opinion unpersuasive.

Neither is there any merit in the suggestion that requiring a showing that the repeated traumas Brandt alleges to have experienced contributed in some material and substantial degree to her claimed injury somehow enhanced her burden of proof beyond that required by the law. Under the circumstances, the expression is but a different formulation of the rule that a workers' compensation claimant has the burden of proving by a preponderance of the evidence that the employment proximately caused an injury which resulted in disability compensable under the Workers' Compensation Act. *Liberty v. Colonial Acres Nsg. Home, supra*; *Phipps v. Milton G. Waldbaum & Co.*, 239 Neb. 700, 477 N.W.2d 919 (1991).

The third assignment of error, in which Brandt quarrels with the compensation court's finding that she did not sustain her burden of proof, is subsumed in the analyses of the first two assignments of error.

Accordingly, the order of dismissal entered by the compensation court is affirmed.

AFFIRMED.

WHITE, J., dissenting.

It is well established that a workers' compensation claimant complaining of a subjective injury or disability cannot recover on the basis of nonmedical evidence alone. See, *Fees v. Rivett Lumber Co.*, 228 Neb. 617, 423 N.W.2d 483 (1988); *Coco v. Austin Co.*, 212 Neb. 95, 321 N.W.2d 448 (1982); *Mack v. Dale Electronics, Inc.*, 209 Neb. 367, 307 N.W.2d 814 (1981). In *Eiting v. Godding*, 191 Neb. 88, 91-92, 214 N.W.2d 241, 244

(1974), we explained the rationale for this rule:

> Where the claimed injuries are of such a character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science. Such a question must necessarily be determined from the testimony of skilled professional persons and cannot be determined from the testimony of unskilled witnesses having no scientific knowledge of such injuries.

The obvious corollary of this proposition is that when expert evidence regarding the cause of a subjective injury is produced and is uncontroverted, it is entitled to greater deference. As this court stated in *Mann v. City of Omaha*, 211 Neb. 583, 592-93, 319 N.W.2d 454, 459 (1982):

> [W]here the medical testimony is uncontroverted, unimpeached, and is given in matters of medical diagnosis which are peculiarly within the range of the knowledge of the expert, the compensation court is not free to substitute its own diagnosis. It is not true that in every case the uncontested opinion of an expert is binding on the trier of fact, but where, as here, the testimony is based on firsthand knowledge, is credible, and has no demonstrable weaknesses or failure of foundation, such testimony cannot be ignored.

Accord, *Sondag v. Ferris Hardware*, 220 N.W.2d 903 (Iowa 1974) (greater deference is accorded expert testimony when the issue necessarily rests on medical expertise); *Rutledge v. Industrial Commission*, 9 Ariz. App. 316, 451 P.2d 894 (1969) (in workers' compensation cases where causation is denied, uncontroverted expert opinion based on the facts is conclusive upon the trier of fact); *Ross v. Sayers Well Servicing Company*, 76 N.M. 321, 414 P.2d 679 (1966) (given the requirement that medical testimony is necessary where causation is contested, an uncontradicted medical opinion based upon the facts is conclusive upon the court); *Hill v. Culligan Soft Water Service Company*, 386 P.2d 1018 (Okla. 1963) (rule that trier of fact determines questions of causation inapplicable where only medical evidence in the record unequivocally attributes claimant's condition to an industrial accident); *Travelers Ins. Co. v. Blazier*, 228 S.W.2d 217 (Tex. Civ. App. 1950) (the

question whether the claimant suffered from polio or a heatstroke was peculiarly within the realm of scientific knowledge and thus the trial court was not authorized to make a diagnosis contrary to that of the only medical witness).

In this case only one physician offered an opinion as to the cause of Brandt's injuries. In three separate letters and during his deposition Dr. Bainbridge stated his conclusion, based upon a reasonable degree of medical certainty, that Brandt's injury resulted from cumulative and repetitive trauma arising from her employment at Leon Plastics. Despite the clarity of Dr. Bainbridge's opinion, the rehearing panel and a majority of this court characterize his statements as "conflicting." They do so based upon another letter written by Dr. Bainbridge in which he refers to Brandt's "work-related injury of December 12, 1989."

Contrary to the majority's assertion, however, Dr. Bainbridge did not write that "the injury occurred on two different dates." Dr. Bainbridge made clear that the reference to a December 12 injury was inadvertent and intended only to identify the approximate date Brandt began experiencing pain radiating into her right leg. Dr. Bainbridge began treating Brandt on March 8, 1990, personally discussed her history with both her and her husband, performed surgery on April 2, 1990, and continued treating her through January 1991. His opinion as to the cause of Brandt's injury is based upon a solid foundation of firsthand knowledge. There is nothing in his attempt to pinpoint the date Brandt's pain became severe which detracts from the certainty of his opinion as to the cause of her injury.

The injury sustained by Brandt is of the type peculiarly within the knowledge of medical experts. There is no justification in law or reason for allowing the Workers' Compensation Court to simply ignore Dr. Bainbridge's conclusion that Brandt's injury resulted from work-related activity. Though judges generally lack the skill and training to competently diagnose the etiology of subjective injuries and disabilities, the majority is determined to anoint them with the power to evaluate the accuracy of uncontroverted opinions rendered by those who are so trained. I therefore cannot join in the majority's decision in this case and the sub silentio

overruling of *Mann v. City of Omaha, supra,* which it represents.

In addition, I would note that in *Heiliger v. Walters & Heiliger Electric, Inc.,* 236 Neb. 459, 461 N.W.2d 565 (1990), we rejected the proposition that an enhanced burden of proof applies in cases involving a preexisting disease or condition and disapproved of language in prior cases indicating such a burden exists. Significantly, language requiring proof that employment exertion contributed in a "material and substantial" degree to causing an injury appears in some pre-*Heiliger* cases imposing an enhanced burden of proof on the issue of causation. See, *Spangler v. State,* 233 Neb. 790, 448 N.W.2d 145 (1989); *Sellens v. Allen Products Co., Inc.,* 206 Neb. 506, 293 N.W.2d 415 (1980). See, also, *Chrisman v. Greyhound Bus Lines, Inc.,* 208 Neb. 6, 301 N.W.2d 595 (1981).

Given the decision in *Heiliger,* continued use of language regarding a "material and substantial" degree of proof is confusing and subject to the interpretation that it signifies the imposition of an enhanced burden of persuasion on the issue of causation. More to the point, the rehearing panel's finding that Brandt failed to adduce sufficient evidence of causation is perhaps only explainable as the result of its deciding the case under an enhanced burden of proof. I respectfully dissent.

GRANT, J., joins in this dissent.